PD-1631-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2015 9:45:52 AM
Accepted 12/18/2015 3:14:04 PM
ABEL ACOSTA
CLERK

NO. _____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## CHARLIE LEE STEWART, SR.

### v.

## THE STATE OF TEXAS

---

From the Austin Court of Appeals
Cause No. 03-13-00803-CR

## APPELLANT CHARLIE LEE STEWART, SR.'S PETITION FOR DISCRETIONARY REVIEW

**E. Alan Bennett**
State Bar #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone:  (254) 772-8022
Telecopier:  (254) 772-9297
Email:  abennett@slmpc.com

# Identity of Judge, Parties and Counsel

Appellant, pursuant to Rule of Appellate Procedure 68.4(a), provides the following list of the trial court judge, all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel.

**THE TRIAL COURT:**

| | |
|---|---|
| Hon. Fancy J. Jezek<br>426th District Court, Bell County<br>P.O. Box 324<br>Belton, Texas 76513 | Trial Court Judge |

**THE DEFENSE:**

| | |
|---|---|
| Charlie Lee Stewart, Sr. | Appellant |
| John Galligan<br>315 South Main Street<br>Belton, Texas 76513 | Trial Counsel |
| E. Alan Bennett<br>510 North Valley Mills Drive, Suite 500<br>Waco, Texas 76710 | Appellate Counsel |

**THE STATE:**

Shelly Dawn Strimple                                    Trial Counsel
Stephanie Newell
Assistant District Attorneys

Bob D. Odom                                            Appellate Counsel
Assistant District Attorney

Henry Garza
Bell County District Attorney
P.O. Box 540
Belton, Texas  76513

# Table of Contents

Identity of Judge, Parties and Counsel ............................................................ 2

Table of Contents ............................................................................................. 4

Index of Authorities......................................................................................... 6

Statement Regarding Oral Argument............................................................... 9

Statement of the Case ...................................................................................... 9

Statement of Procedural History ..................................................................... 9

Ground for Review .........................................................................................10

Reasons for Granting Review .........................................................................10

Argument........................................................................................................11

   1. The Austin Court erred by failing to follow its "first duty" and address Appellant's claim of error in the jury charge. ...............................................11

     A. An Appellate Court's "First Duty" Is to Address the Merits of a Jury Charge Complaint. ................................................................................11

     B. Jurisprudential Reasons Dictate That the Error Claim Be Addressed. ............................................................................................13

        1. The Charge Must Accurately State the Law. ...............................14

        2. The Charge Must Tailor the Definitions of the Culpable Mental States to Correspond to the Applicable Conduct Elements. ...............15

3. Texas Trial Courts Need Guidance on This Unsettled Issue.......16

4. The Standard Definition for "Penetration" Is Improper.............17

C. Summary. ...................................................................................18

D. The Court Should Grant Review on This Issue. .............................19

Prayer ...........................................................................................................21

Certificate of Compliance.............................................................................22

Certificate of Service ...................................................................................22

Appendix .......................................................................................................23

# Index of Authorities

## Texas Cases

*Arline v. State*, 721 S.W.2d 348 (Tex. Crim. App. 1986).................................12

*Arriaga v. State*, No. 05-09-815-CR, 2010 WL 2404693 (Tex. App.—Dallas June 17, 2010, pet. ref'd) .................................................................................17

*Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009).................................12

*Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003) ..................................17

*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994) .....................................15

*Deener v. State*, 214 S.W.3d 522 (Tex. App.—Dallas 2006, pet. ref'd) ............13

*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1994) ................................14

*Garza v. State*, 2006 WL 668386 (Tex. App.—Beaumont Mar. 15, 2006, pet. ref'd).................................................................................................................13

*Glockzin v. State*, 220 S.W.3d 140 (Tex. App.—Waco 2007, pet. ref'd)...........13

*Gonzalez Soto v. State*, 267 S.W.3d 327 (Tex. App.—Corpus Christi 2008, no pet.)...................................................................................................................13

*Herrera v. State*, No. 04-08-931-CR, 2009 WL 4981327 (Tex. App.—San Antonio Dec. 23, 2009, pet. dism'd, untimely filed) .......................................17

*Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996) ...................................14

*Lee v. State*, 442 S.W.3d 569 (Tex. App.—San Antonio 2014, no pet.)............13

*Lovings v. State*, 376 S.W.3d 328 (Tex. App.—Houston [14th Dist.] 2012, no pet.)...................................................................................................................13

*McGee v. State*, 2015 WL 3799362 (Tex. App.—Eastland June 11, 2015, no pet.) ...................................................................................................................12

*Michaelwicz v. State*, 186 S.W.3d 601 (Tex. App.—Austin 2006, pet. ref'd)...13

*Moreno v. State*, No. 09-02-490-CR, 2003 WL 22351320 (Tex. App.—Beaumont Oct. 15, 2003, no pet.) (per curiam)....................................................17

*Murray v. State*, 804 S.W.2d 279 (Tex. App.—Fort Worth 1991, pet. ref'd)...16

*Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005) ....................................12

*Phillips v. State*, 463 S.W.3d 59 (Tex. Crim. App. 2014)..................................12

*Price v. State*, 457 S.W.3d 437 (Tex. Crim. App. 2015)....................................15

*Ragan v. State*, 2013 WL 6797734 (Tex. App.—Tyler Dec. 20, 2013, no pet.).13

*Rawlings v. State*, 874 S.W.2d 740 (Tex. App.—Fort Worth 1994, no pet.)....18

*Rodriguez v. State*, 456 S.W.3d 271 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ................................................................................................................12

*Sakil v. State*, 287 S.W.3d 23 (Tex. Crim. App. 2009) ......................................14

*Saldivar v. State*, 783 S.W.2d 265 (Tex. App.—Corpus Christi 1989, no pet.)16

*Turcios v. State*, No. 12-12-066-CR, 2013 WL 1760798 (Tex. App.—Tyler Apr. 24, 2013, no pet.)....................................................................................17

*Vanover v. State*, 2014 WL 4351416 (Tex. App.—Texarkana Sept. 3, 2014, pet. ref'd) ................................................................................................................12

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012)...............................14

*Villarreal v. State*, 286 S.W.3d 321 (Tex. Crim. App. 2009)............................14

*Wagner v. State*, No. 08-09-021-CR, 2010 WL 2163845 (Tex. App.—El Paso May 28, 2010, pet. ref'd) ................................................................................16

*Williams v. State*, 547 S.W.2d 18 (Tex. Crim. App. 1977)................................14

*Wilson v. State*, 905 S.W.2d 46 (Tex. App.—Corpus Christi 1995, no pet.) ...18

## Texas Statutes

TEX. CODE CRIM. PROC. art. 36.14......................................................................14

## Rules

TEX. R. APP. P. 66.3.......................................................................10, 19, 20

## Treatises

43 GEORGE E. DIX. & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 43:5 (3d ed. 2011)..................................................15

## Statement Regarding Oral Argument

Appellant does not believe that oral argument will aid the decisional process. However, should the Court decide differently, Appellant respectfully requests the opportunity to appear and present oral argument.

## Statement of the Case

A jury convicted Appellant of continuous sexual abuse of a young child. The trial court assessed his punishment and sentenced Appellant to 60 years' imprisonment.

## Statement of Procedural History

The Austin Court of Appeals affirmed Appellant's conviction in a unanimous opinion authored by Justice Bourland that was handed down November 17, 2015. No motion for rehearing was filed.

# Ground for Review

1. The Austin Court erred by failing to follow its "first duty" and address Appellant's claims of error in the jury charge.

# Reasons for Granting Review

The Court should grant discretionary review in this appeal because the Austin Court of Appeals: (1) has issued a decision that conflicts with numerous other court of appeals' decisions, including its own; (2) has left undecided important questions of state law that have not been, but should be, settled by this Court; (3) has decided important questions of state law in a way that conflicts with the applicable decisions of this Court; (4) has misconstrued article 36.19 of the Code of Criminal Procedure; and (5) has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3.

# Argument

## 1. The Austin Court erred by failing to follow its "first duty" and address Appellant's claim of error in the jury charge.

For nearly three decades, this Court has made clear that an appellate court's "first duty" in evaluating an appellate complaint of charge error is to determine whether the charge was erroneous. Texas appellate courts (including the Austin Court) have regularly recited this principle. However, when the Austin Court considered Appellant's claims regarding errors in the charge, it skipped its "first duty" and proceeded straight to the issue of harm. For the reasons set forth, this Court should remand for the Austin Court to properly address the issue presented.

## A. An Appellate Court's "First Duty" Is to Address the Merits of a Jury Charge Complaint.

Since this Court's seminal decision in *Almanza*, the Court has made clear that an appellate court's first responsibility in evaluating a claim of error in the jury charge is to determine whether there is error in the charge as claimed.

"Our **first duty** in analyzing a jury-charge issue is to decide whether error exists. If we find error, a harm analysis must then be done." *Phillips v.*

*State*, 463 S.W.3d 59, 64-65 (Tex. Crim. App. 2014) (emphasis added). The Court has so held on numerous occasions. *See, e.g., Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

The first iteration of this settled principle appeared in the Court's decision in *Arline* where the Court undertook to restate the standard of review established by *Almanza*.

> In *Almanza*, this Court held that Article 36.19, V.A.C.C.P. (1974), prescribes the manner in which jury charge error is reviewed on appeal. Instead of automatically reversing convictions for technical charging errors, an appellate court must undertake a two-step process of review. **First, an appellate court must determine whether error exists in the charge.** Second, the appellate court must determine whether sufficient harm was caused by the error to require reversal of the conviction.

*Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (emphasis added) (citations omitted).

Texas intermediate appellate courts (including this one) have virtually all cited this principle. *See, e.g., McGee v. State*, 2015 WL 3799362, at *3 (Tex. App.—Eastland June 11, 2015, no pet.); *Rodriguez v. State*, 456 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *Vanover v. State*, 2014 WL 4351416, at *1 (Tex. App.—Texarkana Sept. 3, 2014, pet. ref'd); *Lee v.*

*State*, 442 S.W.3d 569, 576-77 (Tex. App.—San Antonio 2014, no pet.); *Ragan v. State*, 2013 WL 6797734, at *3 (Tex. App.—Tyler Dec. 20, 2013, no pet.); *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Gonzalez Soto v. State*, 267 S.W.3d 327, 334 (Tex. App.—Corpus Christi 2008, no pet.); *Glockzin v. State*, 220 S.W.3d 140, 148 (Tex. App.—Waco 2007, pet. ref'd); *Deener v. State*, 214 S.W.3d 522, 528 (Tex. App.—Dallas 2006, pet. ref'd); *Garza v. State*, 2006 WL 668386, at *1 (Tex. App.—Beaumont Mar. 15, 2006, pet. ref'd); *Michaelwicz v. State*, 186 S.W.3d 601, 622 (Tex. App.—Austin 2006, pet. ref'd).

Despite the regular recitation of this principle by Texas appellate courts, as demonstrated in Appellant's case, the Austin Court (and others) pay only lip service to this principle.

## B. Jurisprudential Reasons Dictate That the Error Claim Be Addressed.

An appellate court should first address whether error exists in the charge as alleged because: (1) the litigants are entitled to a charge that accurately states the law and instructs the jury accordingly; (2) trial courts are required to submit a jury charge that properly tailors the definitions of the culpable mental states to the "conduct element(s)" of the offense alleged;

and (3) trial courts need guidance from the appellate courts, especially when the issue is unsettled.

**1.      The Charge Must Accurately State the Law.**

Article 36.14 of the Code of Criminal Procedure requires a trial court to furnish "a written charge [to the jury] distinctly setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14.

> The purpose of the trial judge's jury charge is to instruct the jurors on all of the law that is applicable to the case. "Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."

*Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1994)) (footnotes omitted).

"It is not the function of the charge merely to avoid misleading or confusing the jury; it is the function of the charge to lead and to prevent confusion." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)); *accord Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009).

For these reasons, "each statutory definition that affects the meaning of an element of the offense must be communicated to the jury" in the charge. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009) (quoting 43

GEORGE E. DIX. & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 43:5 (3d ed. 2011). Here, Appellant's complaint related to errors in the definitions submitted in the charge. A criminal defendant (and the State for that matter) is entitled to a jury charge that includes proper definitions—especially, when he calls such errors to the trial court's attention.

**2. The Charge Must Tailor the Definitions of the Culpable Mental States to Correspond to the Applicable Conduct Elements.**

"A trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994)).

This error by the trial court was the basis of Appellant's complaint. Nevertheless, the Austin Court ignored the merits and fast forwarded straight to the question of harm. The court never stated clearly and unequivocally that the charge contained error. Why was it so difficult for the Austin Court to address the complaint of charge error properly preserved in the trial court?

**3. Texas Trial Courts Need Guidance on This Unsettled Issue.**

Appellant urged that a decision by the Eastland Court regarding the conduct elements for aggravated sexual assault would apply to the offense of continuous sexual assault in which the underlying offense was aggravated sexual assault. *See Baker v. State*, 94 S.W.3d 684, 690 (Tex. App.—Eastland 2002, no pet.).

The Austin Court and Waco Court have both recognized that this issue is unsettled. *See Reed v. State*, 421 S.W.3d 24, 28 (Tex. App.—Waco 2013, pet. ref'd); *Belmares v. State*, No. 03-11-121-CR, 2011 WL 5865236, at *2 (Tex. App.—Austin Nov. 23, 2011, pet. ref'd). However, characterizing the issue as "unsettled" is a gross understatement. Other than the Eastland Court, Texas appellate courts have been avoiding deciding this issue for at least 25 years in sexual assault cases. *See, e.g., Wagner v. State*, No. 08-09-021-CR, 2010 WL 2163845, at *5 (Tex. App.—El Paso May 28, 2010, pet. ref'd); *Murray v. State*, 804 S.W.2d 279, 281 (Tex. App.—Fort Worth 1991, pet. ref'd); *Saldivar v. State*, 783 S.W.2d 265, 267-68 (Tex. App.—Corpus Christi 1989, no pet.).

Without further guidance from appellate courts, Texas trial courts are left scratching their heads when called upon to decide which conduct elements apply to a charge of continuous sexual abuse.

**4.     The Standard Definition for "Penetration" Is Improper.**

Appellant also challenged the non-statutory definition of the term "penetration" submitted in the charge by the trial court. It was an improper comment on the evidence.

"Texas courts are forbidden from instructing the jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis." *Brown v. State*, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003). The non-statutory definition submitted by the trial court plainly violates this principle.

Even though this definition has no statutory basis, numerous appellate courts have approved an instruction like the one submitted in Appellant's case. *See, e.g., Turcios v. State*, No. 12-12-066-CR, 2013 WL 1760798, at *5 (Tex. App.—Tyler Apr. 24, 2013, no pet.) ; *Arriaga v. State*, No. 05-09-815-CR, 2010 WL 2404693, at *3 (Tex. App.—Dallas June 17, 2010, pet. ref'd); *Herrera v. State*, No. 04-08-931-CR, 2009 WL 4981327, at *7 (Tex. App.—San Antonio Dec. 23, 2009, pet. dism'd, untimely filed); *Moreno v. State*, No. 09-02-490-CR, 2003 WL 22351320, at *3 (Tex. App.—Beaumont Oct. 15, 2003, no pet.) (per curiam); *Wilson v. State*, 905 S.W.2d 46, 48-49 (Tex. App.—Corpus Christi

1995, no pet.); *Rawlings v. State*, 874 S.W.2d 740, 744-45 (Tex. App.—Fort Worth 1994, no pet.).

Therefore, the jurisprudential reasons described above dictate that the Austin Court should have directly addressed whether the charged contained error. Otherwise, these settled principles governing Texas criminal jury charges have little value or meaning if an appellate court can simply disregard them if that court determines that a charge error is harmless without taking the time to perform its adjudicative function and determine whether the charge in fact contained error.

## C.    Summary.

The Austin Court erred by failing to observe its "first duty" and plainly address the issue of whether the charge was erroneous. An appellate court should consistently and faithfully follow this requirement because: (1) a jury charge is required to provide the jury (virtually always laypersons) with accurate definitions and instructions; (2) a jury charge must tailor the relevant culpable mental state(s) to the conduct element(s) of the offense charged; and (3) Texas trial courts need guidance to properly carry out their responsibilities with regard to the jury charge, particularity concerning unsettled issues like those presented here.

### D. The Court Should Grant Review on This Issue.

The Court should grant review of this issue for most of the reasons listed in Rule 66.3. *See* TEX. R. APP. P. 66.3.

The Austin Court's decision appears to conflict with the decisions of numerous intermediate appellate courts (including the Austin Court's own decision) with regard to an appellate court's obligation to address whether a jury charge contains error. *Id.* 66.3(a).

The Austin Court has left undecided important questions of state law that have not been, but should be, settled by this Court, namely: (1) which conduct elements apply to the offense of continuous sexual abuse; and (2) whether the non-statutory definition of penetration constitutes a comment on the evidence. *Id.* 66.3(b).

The Austin Court's decision conflicts with the applicable decisions of this Court regarding an appellate court's "first duty" to address a claim of error in the jury charge and regarding comments on the evidence. *Id.* 66.3(c).

The Austin Court appears to have misconstrued article 36.19 of the Code of Criminal Procedure which governs judicial review of errors in the charge. *Id.* 66.3(d).

And finally, the Austin Court has so far departed from the accepted and usual course of judicial proceedings as to call for an exercise of this Court's power of supervision. *Id.* 66.3(f).

For these reasons, this Court should grant this ground for discretionary review.

# Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant Charlie Lee Stewart, Sr. asks the Court to: (1) grant review on the issues presented in this petition for discretionary review; and (2) grant such other and further relief to which he may show himself justly entitled.

Respectfully submitted,


*/s/ Alan Bennett*
E. Alan Bennett
SBOT #02140700
Counsel for Appellant

Sheehy, Lovelace & Mayfield, P.C.
510 N. Valley Mills Dr., Ste. 500
Waco, Texas 76710
Telephone:       (254) 772-8022
Fax:       (254) 772-9297
Email:       abennett@slmpc.com

## Certificate of Compliance

The undersigned hereby certifies, pursuant to Rule of Appellate Procedure 9.4(i)(3), that this computer-generated document contains 3,151 words.

*/s/ Alan Bennett*
E. Alan Bennett

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of this brief was served electronically on December 17, 2015 to: (1) counsel for the State, Bob Odom, bob.odom@co.bell.tx.us; and (2) the State Prosecuting Attorney, lisa.mcminn@SPA.texas.gov.

*/s/ Alan Bennett*
E. Alan Bennett

# Appendix

Opinion of Austin Court of Appeals:

    *Stewart v. State*, No. 03-13-00803-CR, 2015 WL 7424736 (Tex. App.—Austin Nov. 17, 2015, pet. filed)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00803-CR

**Charlie L. Stewart, Sr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 70,638, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Charlie L. Stewart, Sr. of continuous sexual abuse of a young child, and the trial court assessed punishment at sixty years' imprisonment. *See* Tex. Penal Code § 21.02. In three issues, appellant contends that the jury charge contained three errors that each resulted in egregious harm. We will affirm the trial court's judgment.

## BACKGROUND

The record shows that appellant is T.M.'s paternal grandfather and that T.M. lived in appellant's home during her sixth-grade year and some of the following summer in 2012. While T.M. was visiting her mother that summer, T.M. told her mother that appellant had been sexually abusing her by putting his sexual organ into her sexual organ. T.M. further told her mother that the abuse had been happening "for quite a while" and that the most recent incident occurred the previous

week. Based on T.M.'s outcry, her mother took her to the hospital, where a forensic nurse conducted an examination. The forensic nurse then called the police, who began an investigation.

At trial, T.M. testified about the abuse, stating that appellant went into her bedroom at night and had sexual intercourse with her "a lot" during her sixth-grade year and "in different months" over that time period. In addition to T.M.'s testimony, three other women—appellant's niece, appellant's great-niece, and a daughter of appellant's friend—also testified that appellant had sexually abused them when they were minors. One of the women testified that she reported the sexual assault years ago after it occurred and that the case was investigated and went to court in Mississippi. The State introduced evidence showing that appellant pled guilty to the offense, although appellant insisted at trial that he pled no contest.

The forensic nurse who examined T.M. testified about T.M.'s account of the sexual abuse. The nurse further testified that an examination of T.M. revealed redness and skin breakdown inside her sexual organ that could be caused by sexual intercourse or poor hygiene and that the nurse did not believe it was caused by poor hygiene. In addition, a portion of the mattress taken from T.M.'s bed at appellant's house had a semen stain containing sperm that was tested and found to be consistent with appellant's DNA.

Appellant testified at trial and denied all allegations of sexual abuse. At the conclusion of trial, the jury found appellant guilty of continuous sexual abuse of T.M. The trial court then assessed punishment at sixty years' imprisonment. This appeal followed.

**DISCUSSION**

In three issues, appellant argues that the trial court made the following errors in the jury charge: (1) failing to sua sponte instruct the jury to disregard evidence obtained by T.M.'s mother during the investigation if the jury determined that the evidence was unlawfully obtained; (2) failing to properly define the terms "intentionally" and "knowingly"; and (3) submitting an erroneous instruction regarding the term "penetration."

In reviewing claims of jury-charge error, we first determine if there was error, and, if there was error, we then decide whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Kuhn v. State*, 393 S.W.3d 519, 524 (Tex. App.—Austin 2013, pet. ref'd). The amount of harm necessary to warrant a reversal depends on whether the defendant objected to the jury charge. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. If the defendant preserved error with a timely objection in the trial court, the record need only show "some harm" to warrant a reversal. *Ngo*, 175 S.W.3d at 743; *Kuhn*, 393 S.W.3d at 524. If the defendant did not preserve error, we will reverse only if the record shows "egregious harm." *Ngo*, 175 S.W.3d at 743-44; *Kuhn*, 393 S.W.3d at 524. In this case, appellant made no objections to the jury charge at trial, making his complaints on appeal subject to an "egregious harm" analysis in the event he shows the existence of an error.

Under the "egregious harm" standard, reversal is required only if appellant suffered harm so egregious that he was denied a fair and impartial trial. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). In determining whether appellant was deprived of a fair and impartial trial, we review (1) the entire jury charge; (2) the state of the evidence, including

3

contested issues and the weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record as a whole. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Egregious harm means the charge error affected the very basis of the case, deprived the defendant of a valuable right, vitally affected a defensive theory, or made a case for conviction clearly and significantly more persuasive. *Taylor*, 332 S.W.3d at 490; *Almanza*, 686 S.W.2d at 172.

We need not decide whether the trial court erred in the three instances alleged by appellant because even assuming all three errors occurred, we conclude that the errors would be harmless. Because the evidence presented by the record is a relevant consideration for all three of appellant's issues, we will address the evidence in detail here before applying it to each of the issues below.

A review of the record in this case shows that the evidence of appellant's guilt was extensive. T.M. testified that appellant had sexual intercourse with her "a lot" and over a period of months during her sixth-grade year. T.M. testified that the sexual abuse occurred on the bed in which she slept at appellant's house or on the floor next to the bed. Three additional witnesses—T.M.'s mother, a forensic nurse, and a forensic interviewer—all testified about T.M.'s separate accounts of the sexual abuse, and all of the accounts included allegations that appellant put his sexual organ into T.M.'s sexual organ. The forensic nurse further testified that T.M. had redness and skin breakdown in her sexual organ that could be evidence of sexual intercourse or poor hygiene and that the damage likely was not from poor hygiene because T.M. appeared to have good hygiene.

4

In addition to the evidence of appellant's sexual abuse of T.M., three other women testified that appellant sexually assaulted them when they were minors.[1] The first woman, appellant's great-niece, was nineteen years old at the time of trial and testified that appellant drove her to a deserted area and raped her when she was in seventh grade. The woman testified that she told her grandmother about the assault when she got home, but her grandmother did not believe her. The woman further testified that appellant wrote her a letter from jail during the investigation into T.M.'s allegations. In the letter, which was admitted into evidence at trial and which appellant acknowledged writing, appellant asked the woman to recant her accusation against him and provided a recantation for her to type and provide to investigators. Appellant also told the woman in the letter not to tell anyone about the letter and to destroy it after she typed the recantation.

The second woman who testified was appellant's niece and was thirty-six years old at the time of trial. She testified that appellant sexually assaulted her on three separate occasions, all when she was sixteen years old or younger—once in Mississippi, once at his home in Texas, and once after he picked her up from summer school in Texas and drove her to a deserted area. After the assault in Mississippi, the woman told her guidance counselor what happened, and the counselor called the police. A "criminal affidavit" from the Mississippi case was admitted into evidence at trial, and the affidavit indicated that appellant pled guilty to the offense. Appellant insisted at trial that he believed he pled no contest.

---

[1] At a pre-trial hearing regarding the State's notice of intent to introduce extraneous offenses, the trial court ruled that the testimony of the other women was admissible under article 38.37 of the Texas Code of Criminal Procedure and Rule 404(b) of the Texas Rules of Evidence. *See* Tex. Code Crim. Proc. art. 38.37; Tex. R. Evid. 404(b). On appeal, appellant does not raise an issue about the admissibility of the testimony.

The third woman who testified was thirty-five years old at the time of trial and testified that her parents were friends with appellant when she was a child and that she would sometimes spend the night at appellant's home when she was ten or eleven years old. She testified that during one of the nights she stayed at appellant's home, he came into her bedroom and tried to have sexual intercourse with her. When she tried to scream, he covered her mouth and told her he would kill her if she did not stay quiet. The woman later told her parents and appellant's wife about the assault, but none of them believed her. The woman testified that her parents continued to send her to sleep over at appellant's house after her outcry, but because of the outcry, appellant's wife made her sleep in the master bed with appellant and his wife. There, appellant would reach over his wife after she fell asleep and rub the woman on her side, hip, and leg.

In addition to the evidence set forth above, a forensic scientist also testified that a semen stain containing sperm was found on a portion of the mattress top of the bed in which T.M. slept in appellant's home, and a second forensic scientist testified that tests confirmed to a reasonable degree of scientific certainty that appellant was the source of the DNA in the stain. In a pre-trial interrogation, appellant denied participating in any sexual activity in T.M.'s bedroom. At trial, he testified that he slept on the bed for the month of August 2008 (approximately four years before T.M.'s outcry) because of back problems.

Taking into consideration the considerable evidence admitted at trial, we now turn to each of appellant's arguments alleging error in the jury charge.

6

*Lack of Article 38.23 Instruction*

In his first issue, appellant contends that the trial court failed to sua sponte include an instruction in the jury charge directing the jury to disregard evidence regarding T.M.'s underwear, which were obtained from appellant's home by T.M.'s mother, if the jury determined that the evidence was unlawfully obtained. Evidence at trial showed that an investigator, Sergeant David LaCroix, spoke with T.M.'s mother early in the investigation and that the two of them discussed the possibility that T.M.'s mother could get some of T.M.'s underwear from the dirty laundry at appellant's home for use in the investigation. Sergeant LaCroix told T.M.'s mother that she could bring the underwear in for testing if she had access to them. T.M.'s mother then asked appellant if she could do laundry at his home, and while in his home, she collected T.M.'s underwear from the dirty laundry and took them to the police station.

Appellant argues that the testimony about T.M.'s mother's retrieval of the evidence raised a fact issue as to whether she acted unlawfully and as an agent of the State when she retrieved the evidence. Appellant contends that the trial court therefore should have included an appropriate instruction in the jury charge pursuant to article 38.23 of the Texas Code of Criminal Procedure, which states the following:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this

7

> Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a).

Appellant did not request the above instruction or object to the absence of the instruction at trial and must therefore show egregious harm as a result of the instruction's absence. In addition to the extensive evidence of appellant's guilt detailed above, the record also shows that the underwear were not strong evidence of appellant's guilt. Two pairs of T.M.'s underwear were tested, and one pair tested negative for the presence of a potential semen stain. The other pair tested positive for a potential semen or vaginal-fluid stain and then tested negative for spermatoza. The forensic scientist did not recover any DNA from either pair of underwear. The evidence taken from the underwear was not adverse to appellant other than the potential semen stain on one pair that did not contain spermatoza and therefore could have been a vaginal-fluid stain.

Further, a review of the record shows that the State did not mention the evidence regarding the underwear in closing argument but instead relied on all of the other evidence of appellant's guilt in arguing for a conviction. In defense counsel's closing argument, he not only addressed his concerns about the propriety of the conduct of Sergeant LaCroix and T.M.'s mother but also used the evidence of T.M.'s mother's retrieval of the underwear in order to reinforce an ongoing defensive theory that T.M.'s mother spearheaded a conspiracy to convict appellant of sexual assault.[2] Specifically, defense counsel pointed out the alleged impropriety of Sergeant LaCroix and

---

[2] Among other implications from the defense that T.M.'s mother had a problem with appellant and caused the victims to fabricate their accusations, appellant testified that his relationship with T.M.'s mother "fundamentally changed" in early 2012 (approximately four months before

8

T.M.'s mother's actions in T.M.'s mother's retrieval of the evidence and then argued that "the relationship or agreement that seemed to be understood between [T.M.'s mother] and the police officer that night for her to go and get the panties is an indication of [T.M.'s mother's] intent to control the case." During the case-in-chief, defense counsel also cross-examined and

---

T.M.'s outcry) when T.M.'s mother "attack[ed]" him in his home and called the police, accusing him of harming her. He testified that after the incident, he told T.M.'s mother that she was no longer welcome in his home. During cross-examination, appellant testified more explicitly about his theory in the following exchange between him and the prosecutor:

| | |
|---|---|
| Prosecutor: | And what you're telling the jury is, these women and this child who are speaking of abuse over a span of 20 years or more are all lying? |
| Appellant: | Yes, they're all lying. And it's one person that's controlling them. |
| Prosecutor: | They have all made this up to get back at you for some reason? |
| Appellant: | Yes, ma'am. |
| Prosecutor: | Who knows what, but for some reason all four of these victims have something against you— |
| Appellant: | No— |
| Prosecutor: | —correct? |
| Appellant: | —I didn't say they have anything against me. It's one person that are [sic] manipulating these three people. |
| Prosecutor: | I'm speaking of four persons, sir. |
| Appellant: | [The final woman who testified about sexual abuse] is not in the—in the equation. |
| Prosecutor: | How is she— |
| Appellant: | [She]— |
| Prosecutor: | —not in the equation, sir? |
| Appellant: | Reason I say she's not in the equation because [she] is not being manipulated by [T.M.'s mother]. The only thing that manipulates [the final woman who testified] is the fact that she has a problem with her parents. This is a time for her also to take and get revenge for whatever she feels that her parents done to her. |
| Prosecutor: | So all of these women have some conspiracy between the four of them to lie about you having sex with them? |
| Appellant: | Yes, ma'am. |

9

re-cross-examined both Sergeant LaCroix and T.M.'s mother about T.M.'s mother's retrieval of the underwear, calling into question the propriety of their actions for the jury's consideration.

Considering the substantial evidence of appellant's guilt—including the presence of appellant's DNA in a semen stain containing sperm on T.M.'s mattress and the testimony of T.M. and three other victims regarding sexual assaults committed against them by appellant when they were minors—and considering both parties' closing arguments, theories, and the record as a whole, we conclude that the absence of an instruction that would have directed the jury not to consider any evidence regarding the underwear if the jury believed the underwear were unlawfully obtained did not deprive appellant of a fair and impartial trial. *See Barrios*, 283 S.W.3d at 350 (reversal required only if harm so egregious that defendant did not have fair and impartial trial). Even if the jury had received the instruction and disregarded the evidence regarding the underwear, the record provides a vast amount of evidence to support a conviction. Accordingly, we overrule appellant's first issue.

### *Definitions of "Knowingly" and "Intentionally"*

In his second complaint about the jury charge, appellant argues that the trial court did not properly tailor the definitions of "knowingly" and "intentionally" with regard to the alleged offense of aggravated sexual assault. Aggravated sexual assault is one of the acts of sexual abuse that will support a conviction for continuous sexual abuse of a child if the act is proven to have been

10

committed with a certain frequency and over a certain time period.[3] The definitions in the jury charge were as follows:

> A person acts intentionally, or with the [sic] intent, with respect to the nature of his conduct when it is his conscious objective or desire to cause the result.

> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Appellant asserts that the trial court incorrectly defined the culpable mental states for the offense. This Court and at least one other intermediate appellate court has recognized that the law is somewhat unsettled regarding the way in which culpable mental states should be defined in a sexual-assault charge. *See Reed v. State*, 421 S.W.3d 24, 28 (Tex. App.—Waco 2013, pet. ref'd); *Belmares v. State*, No. 03-11-00121-CR, 2011 WL 5865236, at *2 (Tex. App.—Austin Nov. 23, 2011, pet. ref'd) (mem. op., not designated for publication).

However, we need not decide whether error occurred because even assuming that the trial court erred, appellant did not object to the definitions or request different definitions at trial and is therefore not entitled to a reversal of his conviction unless he shows that he was egregiously

---

[3] To establish continuous sexual abuse of a young child, the State must prove that, during a period of thirty or more days in duration, the defendant committed two or more acts of sexual abuse, and at the time of the commission of each of these acts of sexual abuse, the defendant was seventeen years of age or older and the victim was younger than the age of fourteen. *See* Tex. Penal Code § 21.02. An "act of sexual abuse" includes aggravated sexual assault of a child. *See id*. A person commits aggravated sexual assault of a child if he knowingly or intentionally causes the penetration of a child's anus or sexual organ by any means or causes his sexual organ to contact the sexual organ of a child younger than fourteen years of age. *Id*. § 22.021(a)(1)(B)(i), (iii), (a)(2)(B).

11

harmed. *Ngo*, 175 S.W.3d at 743-44; *Kuhn*, 393 S.W.3d at 524. In considering the entire jury charge as part of our egregious-harm analysis, we note that the trial court correctly tracked the applicable statute and properly used the terms "intentionally" and "knowingly" in the application paragraphs. Specifically, the charge stated:

> [I]f you believe from the evidence beyond a reasonable doubt, that the defendant, . . . . during a period that was 30 days or more in duration, committed two or more acts of sexual abuse against [T.M.], said acts of sexual abuse having been violations of one or more of the following penal laws, namely:
>
> . . . .
>
> aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of [T.M.], a child who was younger than 14 years of age, by the defendant's sexual organ;
>
> aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the sexual organ of [T.M.], a child who was younger than 14 years of age, by the defendant's finger;
>
> aggravated sexual assault of a child by intentionally or knowingly causing contact with the sexual organ of [T.M.], a child who was younger than 14 years of age, by the defendant's sexual organ.

Thus, the jury was properly instructed that a conviction was warranted only if the jury found that appellant had intentionally or knowingly caused the penetration of T.M.'s sexual organ or contact between appellant's sexual organ and T.M.'s sexual organ.[4] The language is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code § 22.021; *Belmares*, 2011 WL 5865236, at *3.

---

[4] There was some evidence at trial that appellant had touched and/or penetrated T.M.'s sexual organ using his hand, hence the instruction regarding penetration with a finger, but the bulk of the evidence at trial related to appellant penetrating T.M.'s sexual organ with his sexual organ.

12

Application paragraphs that correctly instruct the jury on the law applicable to the case mitigate against a finding of egregious harm. *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Belmares*, 2011 WL 5865236 at *3.

Further, intent was not a contested issue at trial in this case. In this case, appellant denied that any sexual contact occurred, and his defensive theory was that T.M. fabricated her outcry. Throughout trial and in closing arguments, the defense focused on the credibility of appellant and T.M., as an excerpt from defense counsel's closing arguments makes clear:

> I think you also had an opportunity to see in the course of this trial that oftentimes what you're ultimately presented with doesn't boil down to really just hard core evidence that you can see, that you can feel or that may have been able to have been even sent off to be analyzed.
>
> You deal with something far more difficult to weigh and to evaluate. And that's credibility.
>
> And you recall how many people during the course of voir dire were asked about issues dealing with exactly that. He said, she said. Because frequently there is nothing more.
>
> And then is when you have to make that hard determination as to whether or not actual and sufficient relevant proof beyond a reasonable doubt has been provided.
>
> Credibility. Credibility, we submit to you is the most important aspect of your final determination when you go back in and deliberate on this case.

When intent is not a contested issue at trial, the submission of erroneous definitions of "intentionally" and "knowingly" is not egregiously harmful to the defendant. *Belmares*, 2011 WL 5865236, at *3; *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989,

13

no pet.); *see also Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of Jones in touching B.S.S., while it was a part of the State's required proof, was not a contested issue and consequently Jones could not be egregiously harmed by the definition of the intentional and knowing state of mind.")

Considering the entire record, including the extensive evidence of appellant's guilt, the application paragraphs in the jury charge, and the lack of a dispute about the issue of intent, we conclude that appellant was not egregiously harmed by the trial court's definitions of "intentionally" and "knowingly" even if the definitions were in error. *See Patrick*, 906 S.W.2d at 493; *Belmares*, 2011 WL 5865236, at \*3; *Saldivar*, 783 S.W.2d at 268; *Jones*, 229 S.W.3d at 494. We therefore overrule appellant's second issue.

### Instruction Regarding the Term "Penetration"

In his third issue, appellant contends that the trial court included an erroneous instruction in the jury charge regarding the term "penetration." The challenged instruction stated: "You are instructed that, as to the offense of aggravated sexual assault, penetration is complete regardless how slight." Appellant argues that the instruction was an improper comment on the evidence and should not have been included in the charge.

Appellant concedes that Texas case law has approved of the use of the instruction for more than seventy years but argues that the instruction has been called into question by the analysis of the Texas Court of Criminal Appeals in *Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003). *Brown* was a murder case in which the defendant challenged an instruction stating that the jury could

14

infer intent or knowledge by acts done or words spoken. 122 S.W.3d at 796. The Court in *Brown* held that the trial court's instruction was an improper judicial comment. *Id*. at 802-03.

We are not convinced that the holding in *Brown* has any bearing on the instruction in this case when *Brown* addressed a different instruction and a different offense than the ones here. Appellant does not cite to any case law in which an instruction like the one in this case was evaluated in light of *Brown* and its progeny, and at least one case decided after *Brown* upheld an instruction almost identical to the one here. *Arriaga v. State*, No. 05-09-00815-CR, 2010 WL 2404693, at *2-4 (Tex. App.—Dallas June 17, 2010, pet. ref'd) (not designated for publication). Further, the *Brown* court held that the error in that case was harmless. 122 S.W.3d at 803-04.

In this case, even assuming that the trial court erred in including the instruction, appellant must show egregious harm in order to obtain a reversal, and like *Brown*, a review of the entire record shows that any error in including the instruction was harmless. To begin with, as appellant concedes, the issue of penetration was not contested at trial. Rather, as previously addressed under appellant's second issue above, appellant contended that he never had sexual contact with T.M. and that T.M. was fabricating the allegations. The defense consequently focused throughout trial on the credibility of T.M. and appellant. Further, all of the testimony about T.M.'s account of the sexual abuse—including the testimony of T.M., her mother, the sexual-assault nurse examiner, and the forensic interviewer—was consistent in terms of T.M.'s statements that appellant penetrated her sexual organ with his sexual organ. Specifically, T.M. testified more than once that appellant put his sexual organ "in [her] private part." T.M.'s mother testified that T.M. told her during her outcry that appellant put his "private part in [T.M.'s] private part" and that he would do

15

that until "white stuff came out." The forensic nurse testified that T.M. told her during an examination the day after T.M.'s outcry that appellant put his sexual organ "in her vagina" and that "white stuff" came out of his sexual organ and went "in [her]." The forensic interviewer who interviewed T.M. shortly after her outcry testified that T.M. said that appellant had sex with her and that "white stuff" went into her sexual organ. In addition to testimony about T.M.'s account of the abuse, the forensic nurse also testified that T.M. had damage on the inside of her sexual organ that could be evidence of sexual intercourse or poor hygiene and that it was unlikely the result of poor hygiene.

The record shows that the issue of penetration was not contested or even an issue at trial because all of the evidence describing the alleged sexual abuse of T.M. led to the inevitable conclusion that if sexual abuse occurred, then penetration occurred. Considering all of the evidence of appellant's guilt and the fact that penetration was a non-issue at trial, we conclude that any error in including the instruction in the jury charge was harmless. *See Whitten v. State*, No. 07-12-00200-CR, 2013 WL 4711198, *8 (Tex. App.—Amarillo Aug. 27, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that instruction "that penetration is complete however slight" was harmless where issue of whether penetration occurred was not contested at trial).

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment of conviction.

16

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: November 17, 2015

Do Not Publish

17