

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-20-00063-CR, 04-20-00064-CR, 04-20-00065-CR

David M. **MURPHY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2018CR4881, 2018RCR4882, 2018CR4883
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: May 26, 2021

AFFIRMED

David M. Murphy was charged in three separate indictments with the offenses of assault on a peace officer. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b-2). The three cases were tried to a jury in a consolidated trial. The jury convicted Murphy of all three offenses. On appeal, Murphy argues the trial evidence was insufficient for the jury to find he had the culpable mental state to commit the offenses. Murphy also argues the trial court abused its discretion by overruling his objections and admitting an audio recording into evidence at trial. We affirm.

**THE TRIAL EVIDENCE**

At trial, multiple witnesses testified, including the officers who were the complainants in these cases. The testimony showed that Murphy was an inmate in the Bexar County jail and was awaiting trial in a separate criminal case. On the morning of March 12, 2018, sheriff's deputies transported Murphy to the courtroom for the 399th District Court. Murphy and several other inmates were seated in the courtroom, where they conferred with their attorneys and waited to learn whose case would proceed to trial that day.

Mid-morning, a uniformed on-duty sheriff's deputy, Albert Perez, escorted Murphy and two other inmates out of the courtroom and into a holdover area next to the courtroom. The holdover area had three small holding cells and access to a service elevator used to transport inmates from and to a larger holding area in the courthouse. Deputy Perez told Murphy that his case was not going to trial that day. Deputy Perez removed Murphy's handcuffs and tried to place Murphy in one of the cells in the holdover area, but Murphy, who appeared to be angry and upset, refused to comply with Perez's instructions.

Deputy Perez was then joined by another uniformed deputy, Will Huffmeyer. Deputy Perez asked Deputy Huffmeyer to take Murphy to the other holding facility in the courthouse. Deputy Huffmeyer placed one handcuff on Murphy, but Murphy refused to allow Deputy Huffmeyer to place the other handcuff on him. After Deputy Huffmeyer latched the handcuff onto Murphy's right wrist, Murphy jerked his hand away and pulled the other handcuff from the deputy's hand. Murphy then ran into one of the holding cells with another inmate. The deputies instructed Murphy to calm down and let them put the other handcuff on him, but Murphy refused to comply. Murphy then used his fist and the handcuff to hit Deputy Huffmeyer in the face. Murphy also took "a swing" at Deputy Perez, hitting him either on the side of his face or behind his head. As Deputy Perez attempted to subdue Murphy with a taser, Murphy punched him in the face twice. When

Deputy Perez tried to change the cartridge for his taser, Murphy "r[a]n[] up on [him] again and knock[ed] the taser out of [his] hand." While the two deputies worked to restrain him, Murphy was "swinging his hands violently" and "he still ha[d] that one handcuff in his hand like brass knuckles and he[] [was] hitting both of us." When Murphy hit the deputies, they felt pain.

Deputies Perez and Huffmeyer were soon joined by a third uniformed deputy, Brian Stanford. Deputy Stanford was working nearby when he heard a "thud" in the holdover area for the 399th District Court and went to investigate. Upon arriving in the holdover area, Stanford knew there was a problem because he saw a cell phone and a taser cable on the floor. Deputy Stanford saw the other two deputies talking to Murphy, who was just inside the door of one of the holding cells. Everyone seemed agitated. Only Murphy's right wrist was handcuffed. Deputy Stanford reached into the holding cell and tried to handcuff Murphy's other wrist, but Murphy tried to fight. Murphy took a swing at Deputy Stanford and missed. Deputy Stanford then noticed that Murphy had an unspent taser cartridge in his hand. Deputy Stanford tried to tase Murphy, but it had no effect on him. Another inmate tried to assist the deputies by holding Murphy, but Murphy broke free and advanced out of the cell toward the deputies. Shortly thereafter, Murphy charged at Deputy Stanford and hit him in the face with his fist. The blow caused Deputy Stanford pain.

Once Murphy was outside the holding cell, the deputies positioned themselves to try to take Murphy to the ground. Murphy lunged toward Deputy Huffmeyer and managed to put his hand on the deputy's gun and started pulling on it. Deputy Huffmeyer was trying to hold his gun down while Murphy was trying to pull the gun out of its holster. Deputy Huffmeyer felt his whole body, even his feet, being picked up off the ground by Murphy. Deputy Stanford yelled, "He's going for the gun! He's going for the gun!" According to Deputy Perez, Murphy was "like one hundred percent adrenaline pumping" and he was "swinging his one arm that [Deputy] Stanford [was] trying to get a hold of, and he still has his other hand on Huffmeyer's gun and he's just still

going." Even once Murphy was taken to the ground, he continued to struggle with the deputies. Eventually, with assistance from additional officers, the deputies were able to restrain Murphy.

In addition to the deputies, other witnesses testified. Three attorneys and a court reporter who were in the 399th District Court courtroom at the time of the altercation testified about what they heard in the holdover area and the effect it had in the courtroom. An inmate testified he and Murphy chatted that morning and Murphy "swore up and down he was going home that day." But after talking to his attorney, Murphy's demeanor changed. Murphy "had a blank stare" and "looked like he wasn't there anymore." Then, after Murphy was taken to the holdover area and while a deputy was removing his handcuffs, he yelled, "What are you trying to do to me?"

Murphy testified on his own behalf. On direct-examination, Murphy confirmed he and his attorney had disagreed about his case that morning. When Murphy was escorted to the holdover area, he asked the deputies what was going to happen next. Murphy recalled he was anxious and feeling faint, his heart was racing, and he had chest pains. Murphy said he told the deputies that he needed medical assistance. But Deputy Stanford told Murphy he did not need medical assistance and directed him into a holding cell. Murphy went into the holding cell, where the deputies used a taser on him and punched him. Murphy claimed he could not defend himself because he was wearing "restraints." On cross-examination, Murphy denied that he ever grabbed or tried to grab one of the deputies' guns.

In addition to the witnesses' testimony, the evidence included State's Exhibit 29, which was an audio recording made by the court reporter for the 399th District Court on March 12, 2018. The sixty-one-second audio recording captured sounds in the courtroom and the holdover area. Among other things, the audio recording captured Deputy Stanton yelling, "He's going for the gun! He's going for the gun!"

The evidence also included photographs of the deputies immediately after the incident. The photographs depict some of the injuries the deputies sustained in their struggle with Murphy, including a cut on the back of Deputy Perez's neck and cuts on all three deputies' hands and arms.

### SUFFICIENCY OF THE EVIDENCE

In his first issue, Murphy argues the evidence was legally insufficient to support the jury's findings that he possessed the requisite mental state to commit the assaults.

Evidence is legally sufficient to support a conviction when a rational jury could find the essential elements of the offense beyond a reasonable doubt. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). In conducting a legal sufficiency review, we consider all the admitted evidence in the light most favorable to the jury's verdict. *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). The jury is the sole judge of a witness's credibility, which means it can believe all, some, or none of a witness's testimony. *Id*. The jury can draw reasonable inferences from the evidence, provided that each inference is supported by the evidence presented at trial. *Metcalf*, 597 S.W.3d at 855. "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

The elements of assault on a peace officer are: (1) the person "intentionally, knowingly, or recklessly cause[d] bodily injury" to a peace officer; (2) the person knew the other person was a peace officer; and (3) the peace officer was lawfully discharging his official duties at the time of the assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b-2). A sheriff's deputy is a "peace officer." *Id*. § 1.07(a)(36); TEX. CODE CRIM. PROC. ANN. art. 2.12(1). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id*. § 1.07(a)(8).

"Bodily injury" assault is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). Thus, the precise act or nature of the conduct is inconsequential. *Id*. at 537. "What matters is that the conduct (whatever it may be) is done with the required culpability

to effect the *result* the [l]egislature has specified." *Id*. (quoting *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)) (emphasis in original). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c).

Culpable mental state is ordinarily inferred from the acts of the accused or the surrounding circumstances. *Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984). "Intent may [] be inferred from circumstantial evidence such as acts, words, and the conduct of the [accused]." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). "[T]he factfinder may consider the defendant's conduct and surrounding circumstances and events in deciding the issue of intent." *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.); *see Bin Fang v. State*, 544 S.W.3d 923, 928-29 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding a rational jury could infer the defendant's culpable mental state in an assault bodily injury case "because a person would be aware that beating someone with a fist is reasonably certain to cause bodily injury.").

Here, Murphy argues the evidence was legally insufficient to support the culpable mental state element of the offenses. In making this argument, Murphy refers to Deputy Perez's testimony that Murphy said he did not understand what was going on, and Deputy Huffmeyer's testimony that Murphy "would escalate and then he would just stop" "like a switch would go off in his head."[1] Murphy contends this testimony "describes a man who obviously could not control his actions and

---

[1]In fact, Deputy Huffmeyer testified that Murphy's demeanor vacillated during the incident. According to Deputy Huffmeyer's testimony, Murphy would stop fighting, drop his arms and ask, "Why am I here?" and "Why are you doing this to me?" and then "he would switch back on again and start aggressively not complying."

was not responsible for them." Murphy also points to the inmate's testimony that Murphy "had a blank stare" and "looked like he wasn't there anymore." Murphy argues this evidence shows his mind had failed him.

We reject Murphy's argument that the evidence was insufficient for the jury to find he had the required mental states to commit these offenses. When evaluating the sufficiency of the evidence, we must view the evidence cumulatively. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). We determine if the necessary inferences are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the jury's verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). "When the record supports conflicting inferences, we presume that the [jury] resolved the conflicts in favor of the verdict, and we defer to that determination." *Id*. at 448-49.

After viewing the evidence cumulatively and in the light most favorable to the jury's verdict, we conclude the jury could have reasonably inferred that Murphy possessed the required culpable mental state to commit the offenses. Based on Murphy's conduct and the surrounding circumstances and events, a rational jury could have found that Murphy intentionally, knowingly, or recklessly caused bodily injury to the deputies. When viewed in the light most favorable to the jury's verdict, the evidence showed Murphy was angry and upset while in the holdover area and refused to comply with the deputies' instructions, including their instructions to go into the holding cell and to allow the deputies to handcuff him. Murphy repeatedly hit the deputies with his fist and the handcuffs. At one point, Murphy held an unspent taser cartridge in his hand. At another point, Murphy grabbed Deputy Huffmeyer's gun and tried to remove it from its holster. Given the cumulative force of the evidence, a rational jury could have inferred that: (1) Murphy was aware that his conduct would cause bodily injury to the deputies, (2) Murphy was aware that his conduct was reasonably certain to cause bodily injury to the deputies, or (3) Murphy was aware of but

consciously disregarded a substantial and justifiable risk that he would cause bodily injury to the deputies. *See* TEX. PENAL CODE ANN. § 6.03(a),(b),(c). We conclude the evidence was sufficient to support the jury's findings that Murphy possessed the requisite mental state to commit the assaults. We overrule Murphy's first issue.

## AUDIO RECORDING—RELEVANCE

In his second issue, Murphy argues the trial court abused its discretion by overruling his relevance objection to State's Exhibit 29, the audio recording that captured Deputy Stanton yelling, "He's going for the gun! He's going for the gun!" as well as other sounds in the holdover area and the courtroom.

Texas Rule of Evidence 402 provides that relevant evidence is generally admissible and irrelevant evidence is not admissible. TEX. R. EVID. 402. Texas Rule of Evidence 401 establishes the test for relevant evidence. Under this test, "[e]vidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action." TEX. R. EVID. 401.

To preserve a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely objection that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A); *see Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

Here, the record shows that Murphy's counsel failed to preserve this complaint because he did not make a timely and specific relevance objection in the trial court. At a hearing outside the jury's presence, Murphy's counsel stated that "under [Rule] 401 [State's Exhibit 29] may be relevant, but" "the probative value is substantially outweighed by the danger of unfair prejudice." The trial court overruled this objection. Later, when the State offered State's Exhibit 29 into

evidence in front of the jury, Murphy's counsel objected based on Rule 403 without mentioning relevance or Rules 401 or 402. The trial court overruled the Rule 403 objection.

Because the record shows that Murphy did not make a timely and specific relevance objection in the trial court, his relevance complaint was not preserved for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Griffis v. State*, 441 S.W.3d 599, 612 (Tex. App.—San Antonio 2014, pet. ref'd) (holding the appellant failed to preserve his complaint for appellate review when he failed to lodge an objection in the trial court). Therefore, we overrule Murphy's second issue.

### AUDIO RECORDING—RULE 403

In his third issue, Murphy argues the trial court abused its discretion by overruling his Rule 403 objection to State's Exhibit 29, the audio recording.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id*. "A trial court judge is given considerable latitude with regard to evidentiary rulings." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). We uphold the trial court's evidentiary ruling provided it "is at least 'within the zone of reasonable disagreement.'" *Id*. (quoting *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012)).

Texas Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice …." TEX. R. EVID. 403. While not an exhaustive list, courts generally consider the following factors in performing a Rule 403 analysis: (1) the probative value of the evidence, that is, how compellingly it serves to make a fact of consequence more or less probable; (2) whether the evidence has the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence;

and (4) the proponent's need for the evidence. *State v. Mechler*, 153 S.W.3d 435, 440-41 (Tex. Crim. App. 2005).

"Rule 403 does not require the exclusion of evidence simply because it creates prejudice; the prejudice must be 'unfair.'" *Martinez v. State*, 327 S.W.3d 727, 737 (Tex. Crim. App. 2010). "The danger of unfair prejudice exists only when the evidence has the 'potential to impress the jury in an irrational way.'" *Id.* (quoting *Mechler*, 153 S.W.3d at 440). "Evidence is unfairly prejudicial if it has the capacity to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice." *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). "The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Id.* (internal quotation marks omitted).

Here, Murphy argues the audio recording was not probative of the elemental facts the State had to prove. Nevertheless, to be admissible under Rule 403, the audio recording did not have to be probative of the elemental facts; it had to serve to make a fact of consequence more or less probable. *See Gonzalez*, 544 S.W.3d at 372 ("The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable."). Murphy's actions during the incident were certainly of consequence in determining this case. The audio recording tended to make it more probable that Murphy had tried to grab the deputy's gun in the holdover area. Furthermore, the audio recording was particularly compelling evidence because it captured the sounds of the incident as it happened. The audio recording allowed the jury to hear and assess what transpired for itself.

Apart from the audio recording, the deputies testified that Murphy grabbed Deputy Huffmeyer's gun and tried to pull it out of its holster. The audio recording made it more probable that the deputies' testimony on this point was credible. On the other hand, Murphy flatly denied grabbing or touching the deputy's gun and claimed the deputies had fabricated this detail to cover up their own actions. These circumstances indicate that the State needed the audio recording to solidify this aspect of its case.

Murphy argues the audio recording was unfairly prejudicial because it implied "[he] actually had a gun." We disagree. The audio recording did not imply that Murphy had a gun. The voices on the recording plainly state that Murphy was "going for the gun" and "trying to get his gun." Murphy further argues the audio recording invited the jury to convict him based on "the screaming about a gun and the disorganized panic" in the courtroom. Again, we disagree. The jury already knew that the incident in the holdover area had caused a reaction in the courtroom. Several witnesses who were in court that morning testified that they heard a deputy yell, "He's going for the gun!" and saw the reaction in the courtroom. According to this testimony, people started "scrambling" and looking for the panic button. The court reporter hid under her desk. People were bending over and trying to run out of the courtroom and exit into the hallway. One witness testified that it was "like a nightmare." The audio recording was prejudicial. But given the other evidence admitted, the audio recording had minimal potential to impress the jury in an irrational way. Finally, it took little time to develop this evidence. The audio recording was brief—sixty-one-seconds—thereby minimizing its potential to impress the jury in an irrational way.

After weighing the pertinent factors, the trial court could have reasonably decided that the probative value of the audio recording was not substantially outweighed by the danger of unfair prejudice. We conclude the trial court did not abuse its discretion in overruling Murphy's Rule 403 objection. Therefore, we overrule Murphy's third issue.

## CONCLUSION

Having overruled all of Murphy's issues, we affirm the trial court's judgments.

Irene Rios, Justice

Do not publish