

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00316-CR

Shawn Pierre **LEE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR6846
Honorable George H. Godwin, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  July 30, 2014

AFFIRMED

This case stems from Appellant Shawn Pierre Lee's conviction of the offense of burglary of a habitation with the intent to commit aggravated assault. After finding Lee guilty, the jury assessed punishment at thirty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice and elected not to impose a fine. On appeal, Lee contends (1) the statement of an unavailable witness was improperly excluded under evidentiary Rule 804(b), (2)

the trial court erred in refusing to give instructions on self-defense and necessity, and (3) the evidence is legally insufficient to support the jury's verdict.[1] We affirm the trial court's judgment.

## TRIAL TESTIMONY AND PROCEDURAL HISTORY

Our opinion requires consideration of the trial testimony and the procedural history of the case.

**A.    Trial Testimony**

The testimony considered by the jury came from a litany of witnesses; we focus our attention on the alleged victim, Joel Michael Patterson, Jr., his live-in girlfriend and mother of Lee's infant daughter, Raven Riley, and the San Antonio Police officers and ballistic experts.

*1.    Joel Michael Patterson, Jr.*

Patterson testified that he was living with Riley at the relevant time. He explained that the night before the incident, or April 2, 2010, he and Riley went to a Spurs game and then, about 11:00 p.m., they went to pick up Riley's daughter from Lee. Because of previous problems with Lee, Patterson and Riley called the police to assist in the exchange of custody.

Patterson explained that, the following morning, he and Riley argued and he began throwing her belongings out of the apartment. The next thing Patterson remembers was Lee "walk[ing] in my house with a gun pointed at [Riley's] head saying, 'I'm going to get you-all, I'm going to get you.'" Patterson testified he grabbed the barrel of the gun with his hand, grabbed Riley, and tried to throw Riley out of the room. Although Patterson did not realize it at the time, Lee had already fired a shot hitting Patterson's hand.

Patterson continued fighting with Lee to get the gun. Lee then pressed the gun against Patterson's face and shot him, knocking Patterson's teeth out of his mouth. Patterson remembers

---

[1] For organizational purposes, the sequence of the issues presented by Appellant was changed.

more fighting and then Lee standing over him with the baby in his arms. Before leaving, Lee shot Patterson in the torso, striking Patterson's liver and lungs.

During his testimony, Patterson was adamant that he did not have any weapons, particularly a gun, at the apartment. Although he could not testify positively, Patterson conceded the door was probably open when Lee arrived at the apartment. He further acknowledged screaming at Riley to grab the baby and leave the apartment but that Riley left the apartment without the baby.

*2.     Raven Riley*

Riley testified that on the night in question, she had been living with Patterson for a couple of months. The night before the incident, she and Patterson requested police assistance at Lee's house because Lee had refused to answer her calls about picking up her daughter. Riley testified that on the morning of April 3, 2010, she and Patterson were arguing; he told her to get out of the apartment and she began packing her bags. While in the bathroom, Riley heard a shot and then turned around to see Lee dressed in all black.

After Lee had shot Patterson the first time, Riley witnessed Lee walk towards Patterson and shoot him again. She then ran out of the apartment and heard the third shot. Outside, she called 911, and then saw Lee run off with the baby. As to the gun, Riley testified that she was aware that Lee owned a gun. She also remembered a conversation between Lee and Patterson about a gun, but she could not remember any details.

Riley admitted that the State removed all four of her children from her care. On cross-examination, Riley explained that, during the week of the shooting, she had been staying at Lee's house. Patterson, on the other hand, was staying at her apartment, the location of the shooting. She acknowledged that Patterson was throwing her out of her own apartment.

### 3. *San Antonio Police Officers and Ballistics Experts*

Several San Antonio police officers and crime scene investigators testified as to the collection of three shell casings and two bullet fragments at the apartment, as well as two gun boxes at Lee's residence. The State called firearms expert Edward Wallace who testified that all three cartridges were fired from the same weapon. Additionally, he testified that, in his opinion, both the bullet fragments and the shell casings were fired from a .9 mm Smith and Wesson handgun.

## B.     Procedural History

In his case in chief, Lee's counsel made attempts to (1) introduce into evidence, through two police officers, a DVD showing an interview of Lee by the police, and (2) request that the trial court attach a subpoenaed witness, Brad Collins, who failed to appear at trial. The trial court granted the State's objections to the DVD based on improper predicate and hearsay, and denied Lee's request to attach the witness. Lee's counsel subsequently offered Collins's statement pursuant to the unavailable witness hearsay exception. The State objected, and the court sustained the objection.

After the parties rested, defense counsel requested jury instructions on: (1) self-defense, (2) necessity, and (3) defense of a third person. After reviewing each submission, the court made a determination that the evidence did not support any of the requested instructions and denied the requested instructions.

Neither Collins's statement nor any of the defense's requested instructions was included in the appellate record. On March 20, 2014, this court abated the appeal and ordered the trial court to determine if these documents were either lost or destroyed in accordance with Texas Rule of Appellate Procedure 34.6(f)(4); and if so, the trial court was ordered to make a determination of whether the exhibits could be replaced by agreement of the parties or with a copy the trial court

determined to accurately duplicate with reasonable certainty the original exhibits. *See* TEX. R. APP. P. 34.6(f)(4).

On April 10, 2014, the trial court conducted a hearing and determined the original trial exhibits were lost. After hearing testimony from the trial prosecutor, reviewing documents submitted by the staff attorney from the Bexar County Criminal District Courts, and reviewing the reporter's record from the trial, the trial court determined the exhibits offered in the supplemental reporter's record "accurately duplicate, with reasonable certainty, the original trial exhibits." For the purposes of this appeal, this court incorporated the documents produced at the April 10, 2014 hearing as part of the appellate record.

## C.       Issues on Appeal

On appeal, Lee argues: (1) the trial court erred in excluding Brad Collins's statement, (2) the trial court erred in failing to include self-defense and necessity instructions in the court's charge, and (3) the evidence is insufficient to support the trial court's judgment. We address each separately.

STATEMENT BY UNAVAILABLE WITNESS

Lee argues the trial court erred by refusing to allow Lee to introduce the statement made by Brad Collins, an unavailable witness, into evidence under a hearsay exception. *See* TEX. R. EVID. 804(b)(1).

## A.       Standard of Review

We review a trial court's decision on whether to admit former testimony under rule 804(b)(1) for an abuse of discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994) (en banc); *accord Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *see also* TEX. R. EVID. 804(b)(1). We do not conduct a de novo review, but instead limit our role to determining whether the record supports the trial court's ruling. *Coffin*, 885 S.W.2d at 149. The trial court's

exclusion of testimony is an abuse of discretion only if the decision lies outside the zone of reasonable disagreement. *See id*.; *accord Zuliani*, 97 S.W.3d at 595; *Wilson v. State*, 195 S.W.3d 193, 202 (Tex. App.—San Antonio 2006, no pet.).

**B.      Argument of the Parties**

Lee contends that because both the State and the defense subpoenaed Collins, the trial court erred in denying Lee's request to attach Collins to procure his testimony. Lee argues that based on the trial court's failure to issue an order of attachment, Collins was unavailable to testify; because Collins was unable to testify, the trial court should have allowed Collins's previous statement to be offered into evidence.

The State counters that Rule 804(b)(1) requires more than unavailability, it must also be the kind of testimony admissible pursuant to Rule 804(b)(1). TEX. R. EVID. 804(b)(1).

**C.      Proffered Statement**

In determining whether the trial court abused its discretion in excluding the proffered testimony, we first consider the testimony in question. Collins's entire statement[2] provided as follows:

> My Name is Brad Collins.
> I am 42.
> I completed high school.
> I can read, write and understand the English language.
>
> I live in apartment in 906B at 8170 Cross Creek Apt 609B. The shooting took place in the first floor of my building; they had only been in there about 2 months at the most. I was home today and I was taken out the trash I heard three pops and I looked over to the apartment where the shots came from. I saw the female come out of the apartment and she was talking on the phone calmly. I saw a man running with a baby in his arms. It did not look like he had a gun because of the way he was carrying the baby. He ran around 3 buildings and then ran past me. I drew a diagram to explain how they were. Then after about 2 minutes

---

[2] We note Collins's statement contains several inconsistencies and typographical errors. The statement contained within this opinion is unchanged from the statement offered by the defense.

the person who was shot came out and walked toward me and collapsed on the sidewalk. Then the girl started yelling 'My baby".

I have seen the man before he is the daddy of the baby. He has been in that apartment before when the complainant is out.

The man with the baby was wearing all black, hoodie, and pants. When he was running he was holding the baby in his arms like a football and holding his pants up with the other. I got in my van and tried to follow him but I was not able too. He got in a black truck with silver trim. He was not driving the truck it had been parked waiting for him. He comes everyday in a different vehicle and a different driver.

She did not chase him when he ran off with the baby. She did not go after him. Det. Estrada showed me a photoline up and I told her I think it was number 5 but it could be # 3.

I have read this statement and everything is this statement is true and correct. This incident occurred in San Antonio, Bexar County, Texas.

The typed statement was printed on a prepared form, indicating that Detective Cheri Estrada took the statement on April 3, 2010 at 3:00 p.m. The statement was signed by Collins, but not notarized.

**D.      Exceptions to the Hearsay Rule**

Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay testimony is inadmissible except as provided by statute or the rules of evidence. TEX. R. EVID. 802. Rule 804(b) provides one such exception. *See* TEX. R. EVID. 804(b).

Rule 804(b)(1) allows the admission of "testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" if a declarant is unavailable as a witness. TEX. R. EVID. 804(b)(1). Assuming, without deciding, Collins was unavailable under Rule 804(b)(1), the hearsay exception requires the witness's statement be former testimony. *Id.*

At the time Collins's statement was taken, no counsel was present, not counsel for the State and not defense counsel. The statement was neither notarized nor sworn to as part of a judicial proceeding. There was no examination to develop the assertions contained in the statement by direct, cross, or redirect examination. *See* TEX. R. EVID. 804(b)(1); *cf. Coffin*, 885 S.W.2d at 147. After a review of the record, we conclude Collins's unsworn statement was not testimony under Rule 804(b)(1). Accordingly, the trial court's exclusion of the testimony was not an abuse of its discretion. *See Coffin*, 885 S.W.2d at 149. We overrule this issue.

### SELF-DEFENSE AND NECESSITY INSTRUCTIONS

Lee next argues that the trial court erred in failing to include defensive instructions in the court's charge. Although Lee requested three defensive instructions, he only alleges error as to the trial court's denial of the self-defense and necessity instructions. We limit our discussion to the two requested instructions briefed on appeal.

### A.    Standard of Review

Our first duty in analyzing a jury-charge issue is to decide whether error exists. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). A trial court's decision to deny a defensive issue in a jury charge is reviewed for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). When reviewing a trial court's decision to deny a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

If error exists, we must determine whether the error caused sufficient harm to warrant reversal. *Ngo*, 175 S.W.3d at 743–44. Because Lee properly objected, we determine whether "the error appearing from the record was calculated to injure" his rights, i.e., whether there was "some harm." *Id.*; *Almanza v. State*, 686 S.W.2d 157, 160 (Tex. Crim. App. 1984); *see* TEX. CODE CRIM.

- 8 -

PROC. ANN. art. 36.19 (West 2006). In assessing harm, we consider the jury charge as a whole, the arguments of counsel, all of the evidence "including the contested issues and weight of the probative evidence," and any other relevant factors in the record. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013).

## B.      Jury Charge Instructions

A trial court is required to submit a jury charge that sets out the law "applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence and requested by the defendant. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007); *see also Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998) (holding trial court has no duty to *sua sponte* instruct jury on unrequested defensive issues). "A defendant is entitled to an instruction on self-defense if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the defense." *Ferrel v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001); *accord Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

The purpose of this rule is to ensure that the jury, not the trial court, decides the relative credibility of the evidence. *Id.* at 655. Defensive issues may be raised by the testimony of any witness. *VanBrackle v. State*, 179 S.W.3d 708, 712–13 (Tex. App.—Austin 2005, no pet.). In determining whether the testimony raised a defensive theory, the evidence is viewed in the light most favorable to the defendant. *Id.*

**C.    Arguments of the Parties**

Lee contends the trial court erred in failing to include instructions on self-defense and necessity. Lee argues the defenses were raised, in part, by the DVD of Lee's statement excluded from evidence. Lee further argues that Riley's and Patterson's testimony, regarding arguments and threats made before the shooting, likewise raised these issues. Without the requested instructions, Lee contends he was unable to provide a defense to the actions taken on the day of the incident.

The State counters that because the DVD statement was never introduced, it could not have raised the issue and the record does not support that Riley and Patterson testified to arguments and threats prior to the shooting. However, even assuming there was such testimony, there was no evidence that these threats caused Lee to reasonably believe force was immediately necessary to protect himself against another's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31(a) (West 2011).

**D.    Self-Defense**

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a). A "'[r]easonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42) (West 2011). To justify the use of deadly force against another, an actor must first show he reasonably believed the force was immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a). "A defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct."

*Shaw*, 243 S.W.3d at 659 (emphasis in original).  The evidence must be such that it will support a rational jury finding as to each element of that defense.  *Id.* at 658.

Lee was entitled to a self-defense instruction if evidence was presented that, if believed, showed that Lee reasonably believed his use of deadly force was immediately necessary to protect himself against Patterson's use or attempted use of deadly force.  *See Morales v. State*, 357 S.W.3d 1, 4 (Tex. Crim. App. 2011).  Lee points to the testimony contained within the excluded DVD and the alleged threats and arguments prior to the shooting with Riley and Patterson.  The testimony, however, supports that Lee came to the apartment with a gun, entered the apartment and immediately threatened Riley and Patterson.  While Riley ran from the apartment, Lee shot an unarmed Patterson three different times.  If anyone was provoked, the testimony supports that it only could be Patterson, not Lee.

Viewing the testimony and evidence in the light most favorable to Lee, we cannot agree with Lee's contention that the trial court erred by denying his requested jury instruction.  *See VanBrackle*, 179 S.W.3d at 712–13.  No evidence showed that Lee believed he needed to use deadly force to protect himself.  *See* TEX. PENAL CODE ANN. § 9.31(a).  Instead, the two eyewitnesses describe Lee acting out in anger, not via a protective instinct, in pursuing the unarmed Patterson as he attempted to escape from Lee.  Additionally, the record does not reveal that Patterson used or attempted use of deadly force throughout the entire confrontation.  *See* TEX. PENAL CODE ANN § 9.01(3) (West 2011).  Accordingly, we overrule this issue.

**E.       Necessity**

The defense of necessity is defined in section 9.22 of the Texas Penal Code.  A party's "conduct is justified if . . . the actor reasonably believes the conduct is immediately necessary to avoid imminent harm."  TEX. PENAL CODE ANN. § 9.22(1) (West 2011).  Conduct, in turn, is defined in Penal Code Section 1.07(a)(10) as "an act or omission and its accompanying mental

state." *Id*. § 1.07(a)(10). In *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010), the Court of Criminal Appeals clarified any previous confusion and unambiguously held "the [necessity] doctrine requires an admission to the conduct, which includes both the act or omission and the requisite mental state."

As with self-defense, there was no evidence establishing that Lee reasonably believed his use of deadly force was immediately necessary to avoid imminent harm. *See* TEX. PENAL CODE ANN. § 9.22(1). The only link between the chaos Lee encountered when he arrived at the apartment and the concerns about the welfare and safety of his daughter and the subsequent shooting comes from Lee's counsel's arguments. Arguments of counsel are not testimony. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) (holding unsworn attorney statements generally do not constitute evidence); *accord Ardmore, Inc. v. Rex. Grp., Inc.*, 377 S.W.3d 45, 62 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Because neither Lee nor any other witness, testified or admitted Lee believed that shooting Patterson was immediately necessary to avoid harm and danger to his infant child, Lee was not entitled to a necessity instruction, and the trial court did not err in refusing his request. Lee's issue is overruled.

## INSUFFICIENCY OF THE EVIDENCE

Lee's last argument contends the evidence is legally insufficient to support the jury's verdict. Lee asserts the record fails to support each element of the offense beyond a reasonable doubt.

### A.    Standard of Review

In reviewing the legal sufficiency of the evidence, an appellate court determines whether, viewing "all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Hardy v. State*, 281 S.W.3d 414, 421 (Tex. Crim. App. 2009); *accord Brooks v. State*, 323 S.W.3d 893, 899 (Tex.

Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We must defer to the jury's assessment of the credibility of the witnesses "and the weight to be given [to] their testimony," *Brooks*, 323 S.W.3d at 899, and allow for reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) (stating that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony" except where provided otherwise by law); *Jackson*, 443 U.S. at 319 (reiterating it is strictly the province of the jury "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). In so doing, an appellate court presumes that the jury "resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Williams*, 235 S.W.3d at 750. Only upon a finding the evidence is legally insufficient will this court reverse the trial court's judgment and order an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982). This legal sufficiency standard applies equally to both direct and circumstantial evidence. *Clayton*, 235 S.W.3d at 778; *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

## B.    Argument of the Parties

Lee bases his insufficiency argument on the lack of reliability in the eye-witness testimony and the fact that the testimony was not developed to see the "true and correct story."

The State counters that the evidence established each element of the offense and Lee's argument that the testimony was unreliable and biased is a question left within the province of the jury.

**C.** **Burglary of a Habitation with Intent to Commit Aggravated Assault with a Deadly Weapon**

A person commits an offense if, without the effective consent of the owner, he enters a habitation with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a) (West 2003). Intent is generally proven by circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *accord Kelley v. State*, 429 S.W.3d 865, 872 (Tex. App.—Houston [14th Dist.] 2014, no pet.). While proof of intent cannot rely simply on speculation and surmise, the factfinder may consider the defendant's conduct and surrounding circumstances and events in deciding the issue of intent. *McGee v. State*, 923 S.W.2d 605, 608 (Tex. App.—Houston [1st Dist.] 1995, no pet.).

*1.* *Ownership*

Ownership of a burglarized premises may be proven in one of three ways: (1) title; (2) possession, whether lawful or not; or (3) a greater right to possession than the defendant. TEX. PENAL CODE ANN. § 1.07(a)(35)(A); *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988). Thus, under the Penal Code, any person who has a greater right to the actual care, custody, control, or management of the property than the defendant can be alleged as the "owner." *Alexander*, 753 S.W.2d at 392; *accord Ramirez v. State*, 429 S.W.3d 686, 688 (Tex. App.—San Antonio 2014, no pet.).

The testimony of an owner that she did not give permission to enter the habitation is sufficient to establish the absence of effective consent. *See Rangel v. State*, 179 S.W.3d 64, 69 (Tex. App.—San Antonio 2005, pet. ref'd); *Ellett v. State*, 607 S.W.2d 545, 550 (Tex. Crim. App. 1980). Riley testified that Patterson was living with her permission at the apartment. Additionally, both Riley and Patterson testified that Lee did not have permission to enter the apartment. The

evidence supports that Patterson had a greater right to possession of the apartment than Lee. *See Ramirez*, 429 S.W.3d at 688.

### 2. Without Effective Consent of the Owner

The State points to the testimony that Lee came through an open or unlocked door as a potential evidentiary issue. Forced entry is not, however, an element of burglary; rather, burglary requires entry to be made without the effective consent of the owner. *See* TEX. PENAL CODE ANN. § 30.02(a) (West 2011); *Ellett*, 607 S.W.2d at 549.

Although the door may have been open, there was no evidence that either Riley or Patterson gave Lee consent to enter the apartment. *See Evans v. State*, 677 S.W.2d 814, 818 (Tex. App.—Fort Worth 1984, no pet.) ("A person can make an unlawful entry by walking through an open door when the entry is without the owner's consent."); *Clark v. State*, 667 S.W.2d 906, 908 (Tex. App.—Dallas 1984, pet. ref'd) ("[A]n entry through an open door can constitute a burglary . . . if the building is not open to the public."). Importantly, lack of consent to entry in burglary prosecutions may be shown by circumstantial evidence. *Hathorn v. State*, 848 S.W.2d 101, 107 (Tex. Crim. App. 1992).

Because Lee did not have permission to enter the apartment, regardless of whether the door was open or closed, we conclude the evidence supports the jury's determination that the entry was without the owner's effective consent.

### 3. Commit aggravated assault

An assault occurs when a person "intentionally or knowingly threatens another with imminent bodily injury" or "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive." TEX. PENAL CODE ANN. § 22.01(a)(2),(3) (West 2011).

Riley testified that Lee threatened her with a firearm. *See Harris v. State*, 164 S.W.3d 775, 785 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that the complainant's testimony about being threatened, punched, choked, and pushed supports a finding of threat of harm under Penal Code section 22.01(a) for a conviction of burglary of a habitation). The evidence further supports that Lee shot Patterson in the hand, face, and torso. *Id.*; *see also Odom v. State*, 852 S.W.2d 685, 686–87 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (providing that a complainant's testimony and description of the knife was sufficient to support the jury's finding that the defendant had intent to commit assault even though the knife was never found, and the complainant was not injured by the knife).

Based on the testimony presented at trial, the evidence supports the jury's determination that Lee committed or intended to commit an aggravated assault against Patterson after entering the apartment.

**D.     Analysis**

It was the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is well settled that the jury is the sole judge of the weight and credibility of witness testimony, and we must defer to the fact-finder's assessment of the credibility of the witnesses "and the weight [to] be given to their testimony," and allow for reasonable inferences from the evidence presented. *Brooks*, 323 S.W.3d at 899–900; *Williams*, 235 S.W.3d at 750. Consequently, the jury was entitled to believe Riley's and Patterson's testimony as to what they saw at the apartment and to disbelieve the testimony of any other witness.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient to establish that Lee intentionally or knowingly entered the apartment without

Patterson's effective consent and with the intent to commit aggravated assault.  Accordingly, we overrule this issue.

## CONCLUSION

Having overruled each of Lee's issues on appeal, we affirm the trial court's judgment.


Patricia O. Alvarez, Justice

PUBLISH