

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00483-CR

Ricardo **GONZALES**, Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CR-13554
Honorable Jefferson Moore, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: August 28, 2024

ABATED AND REMANDED

Appellant Ricardo Gonzales, Jr. appeals his convictions for assault bodily injury, official oppression, and violation of civil rights of a person in custody, all class A misdemeanors at the time of their 2014 commission. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b), 39.03(a)(1), (d), 39.04(a)(1), (b). Gonzales raises sixteen issues on appeal. We abate the appeal and remand this cause to the trial court for a hearing on Gonzales's motion for new trial.

**BACKGROUND**

In 2014, Gonzales worked as a Bexar County Sheriff's Office deputy at the Bexar County Adult Detention Center and acted as a member of the Special Emergency Response Team ("SERT"), a team of special officers who undergo extensive and continuous monthly training. The SERT responds to emergency situations, including medical emergencies, riots, and fights. Here, the mental health unit ("MHU") called the SERT because an inmate, Owen Gilbert, was being disruptive and had struck another deputy in the knee. As a result of Gonzales's use of force against Gilbert when taking Gilbert down to the floor, Gilbert suffered a head injury causing him to be transported to the hospital.

Following the incident, Gonzales was indicted for aggravated assault with a deadly weapon, assault causing bodily injury, official oppression, and violation of the civil rights of a person in custody. *See id*. §§ 22.01(a)(1), 22.02(a)(2), 39.03(a)(1), 39.04(a)(1). The jury acquitted Gonzales of aggravated assault with a deadly weapon but found him guilty of the lesser included offense of assault causing bodily injury. The jury also found Gonzales guilty of official oppression and the violation of the civil rights of a person in custody. The trial court sentenced Gonzales to one year in jail for each offense to run concurrently, then suspended his sentences, and placed him on community supervision for one year for each offense. Gonzales appeals.

**ISSUES ON APPEAL**

Gonzales argues sixteen issues on appeal, including three issues, numbered nine through eleven, challenging the sufficiency of the evidence to support his three convictions. In his second issue, he asserts the trial court erred by not holding a hearing on his motion for new trial. Because we conclude the trial court abused its discretion in not conducting a hearing on Gonzales's motion for new trial, we address Gonzales's sufficiency complaints first as they are dispositive, but then

abate the appeal and remand the cause to the trial court to conduct a hearing on Gonzales's motion for new trial as directed by this opinion.

## SUFFICIENCY OF THE EVIDENCE

In his ninth, tenth, and eleventh issues, Gonzales contends the evidence is insufficient to support his convictions for assault causing bodily injury, official oppression, and violating the civil rights of a person in custody. *See id.* §§ 22.01(a)(1), 39.03(a)(1), 39.04(a)(1). Gonzales emphasizes that each offense, as charged, required the State to prove he assaulted Gilbert, which Gonzales claims he did not. Moreover, Gonzales contends the State failed to present evidence that he knew his conduct was unlawful, an element of both his official oppression and violating the civil rights of a person in custody convictions.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we determine whether, "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard coincides with the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

The factfinder alone judges the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We may not reevaluate the evidence's weight and credibility and substitute our judgment for that of the factfinder. *Queeman*, 520 S.W.3d at 622. We must presume the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (reviewing court must not usurp the jury's

role by "substituting its own judgment for that of the jury"); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (reviewing court must not sit as thirteenth juror).

### B. Applicable Facts

The State called several witnesses, including current, former, and retired peace officers and Gilbert's treating physician. The SERT leader at the time, former Bexar County Sheriff's Office Deputy Rodney Rangel, explained the SERT was close to the MHU when the unit requested assistance with Gilbert, claiming he "was being destructive" and had struck another deputy in the knee. In accordance with protocol that the SERT interactions with inmates be videorecorded, Deputy Trevino recorded the incident.

The video begins with Gilbert seen wearing a red uniform lying on his stomach restrained with handcuffs and leg irons, and Gonzales asking Gilbert whether he is going to walk. After Gilbert states, "Yes," Gonzales positions Gilbert to stand up. Before Gilbert reaches a complete upright position on his feet, he makes a backward movement, slightly pauses, to which Gonzales reacts stating, "Really." Gonzales then places his arms around Gilbert's upper body, sweeps Gilbert's legs out from under him causing them to go in the air. Gilbert then falls hitting his back and head on the cement floor. While Gonzales sweeps Gilbert's feet from under him, Rangel can be heard saying, "put [Gilbert] down on the floor." Within seconds of Gilbert's fall to the floor, blood visibly pools near Gilbert's head, and Rangel signals for medical assistance. Gonzales responds by claiming Gilbert headbutted his helmet. After explaining the video, Rangel stated it appeared Gilbert might have been in pain following the incident.

According to Rangel, regardless of ordering Gonzales to take Gilbert to the floor, Gonzales did not use the proper technique or the "minimum force necessary to subdue a subject." Rather, Rangel explained the proper technique requires the SERT member to

grab both sides—both arms, and one knee is supposed to go on the back of the knee, and then you're supposed to pull them down to the buttocks and over to their side and then on to their chest. Hand—I mean, the legs crossed. And, of course, they're already restrained, so you just hold them in that position until you're able to talk to them and gain some kind of compliance.

Rangel added that as the SERT leader when the team approached Gilbert, two officers were not necessary to stand Gilbert up because he was already restrained on the ground.

During cross-examination while viewing the video and photographs taken from the video, Rangel acknowledged possible contact between Gilbert's head and Gonzales's helmet shield as Gilbert tried to forcefully headbutt Gonzales. Based on a separate videorecording from which photographs were made of Gonzales's hard plastic helmet, that had black coated bars on the front, Rangel also acknowledged the helmet contained a foreign substance on the coated bars, but he could not identify the substance. Additionally, although Rangel claimed Gonzales exceeded the force necessary to control the situation, Rangel admitted he did not order Gonzales to move away from Gilbert. Rangel explained that although as the SERT leader he could have ordered Gonzales to move, he did not do so because Gonzales was more experienced than he was, and Gonzales did not continue using unnecessary force. Rangel also requested the sergeant and the lieutenant become involved.

Former Floor Sergeant of the Bexar County Sheriff's Office, Stephen Sprague, also witnessed the incident between Gonzales and Gilbert. Sprague explained that after hearing Gonzales say, "Really," the "[t]he inmate was picked up off the floor and his feet were swept out from under him and he was thrown to the ground." Sprague recalled a "very distinct thud" when Gilbert's head hit the ground and then heard Gilbert make "guttural noises." According to Sprague, he heard Gonzales say Gilbert headbutted him, and he saw Gilbert make a backward movement and Gonzales turn his head sideways, but Sprague did not see actual contact between Gilbert and Gonzales. When preparing his report, Sprague spoke to Gonzales, who Sprague explained

appeared unconcerned about the incident and even asked why he was being questioned about it. In Sprague's opinion, Gilbert did not pose a danger when Gonzales initially attempted to escort him, and Gonzales used "excessive and unnecessary force."

Wen Busby, a SERT training officer prior to her retirement with the Bexar County Sheriff's Office, testified about her involvement in writing policy and training SERT members on new use of force techniques as they evolved. Busby stated Gonzales, as a SERT member, was trained in the proper way to take down an inmate, including hostile inmates and those restrained, using the appropriate use of force. Busby explained that when an inmate is restrained, the SERT member must exercise more care in using any force against them. Busby opined that the takedown technique that Gonzales imposed on Gilbert did not comply with the SERT training Gonzales underwent, and it was not a controlled takedown. Rather, Busby explained the SERT members needed to assist Gilbert to the ground by helping him to a seated position and onto his stomach. Busby affirmed that the video did not appear to show Gonzales was ever in imminent danger. Busby added that she did not see contact between Gilbert and Gonzales; but even if there had been contact, the threat was not serious enough to warrant Gonzales's actions. In Busby's opinion, the video depicted Gilbert in pain after Gonzales took Gilbert to the floor, and Busby heard Gilbert making a moaning sound.

When describing Gonzales's technique, Busby explained Gonzales used his knee by placing it underneath Gilbert's "butt" to raise Gilbert off his feet, rather than a leg sweeping action, but then slammed him to the ground, without breaking his fall. Busby testified no SERT member is trained to use this technique, and in her opinion it constituted excessive force.

Thomas Matjeka, currently a lieutenant with the Kendall County Sheriff's Office and formerly a San Antonio police officer, testified as the State's use of force expert. Lieutenant Matjeka explained that when Gonzales picked up Gilbert after sweeping his legs out from under

him, Gonzales "forcefully body slammed [Gilbert] into the concrete." Although Lieutenant Matjeka thought Gilbert's head contacted Gonzales's helmet, Lieutenant Matjeka stated the contact was slight, minimal at best; and thus, Gonzales's response was not proportionate to the contact or justified and amounted to an unacceptable use of force. Because of the distance between Gilbert's head and the ground and the fact Gilbert was both handcuffed and shackled when Gonzales swept his legs from underneath him, Lieutenant Matjeka opined Gonzales forcefully threw Gilbert down as evidenced by Gilbert's body and head bouncing off the floor. Additionally, Lieutenant Matjeka opined Gonzales did nothing to control Gilbert's fall to the ground.

Emergency medicine physician Dr. Christine Zink testified regarding her care of Gilbert after he was transferred to the emergency room following the incident with Gonzales. Dr. Zink explained Gilbert suffered a "boggy hematoma to the back of the head with a laceration" measuring one centimeter. After undergoing a CAT scan, the results showed that Gilbert had two contusions on each side of his head, but he did not have a skull fracture or brain injury. While Dr. Zink stated Gilbert could have suffered serious bodily injury from his head hitting the floor, Gilbert did not suffer serious bodily injury. After watching the video recording of the incident, Dr. Zink added that Gilbert's moaning appeared to show Gilbert was potentially in pain despite the medical records indicating Gilbert told medical personnel he was at a zero on the pain scale.

The State also presented evidence of two prior extraneous bad acts. Retired Captain Kenneth Meshew, formerly with the Bexar County Sheriff's Office, testified about an event involving Gonzales and another inmate. According to Captain Meshew, and as supported by a videorecording admitted into evidence, Captain Meshew witnessed Gonzales push an inmate's head into the wall while the inmate was handcuffed and wearing leg irons. Captain Meshew testified the inmate did not present a threat prompting Gonzales's response. After seeing the incident, Captain Meshew replaced Gonzales with another officer to watch the inmate and reported

Gonzales, suggesting Gonzales be suspended and recommending Gonzales be removed from the SERT. Nonetheless, Captain Meshew acknowledged that he did not report Gonzales's behavior to the internal investigating office or claim Gonzales committed a crime. Busby also recalled this incident and agreed the restrained inmate did not pose a threat to Gonzales. Busby added that she discussed this incident with other SERT trainers and suggested Gonzales be removed from the SERT.

With respect to the other extraneous offense, Brian David testified regarding his encounter with Gonzales while he was an inmate in the Bexar County Adult Detention Center. According to David, while attempting to retrieve his property, Gonzales confronted him, threw him up against the wall, and then walked him to a holding cell twisting his arm. David testified Gonzales followed him into the cell and then broke his arm. A videorecording of a majority of the incident was admitted into evidence. David acknowledged that the licensed vocational nurses in the infirmary at the jail believed his injury looked like a prior dislocation injury. Nonetheless, medical personnel at the hospital placed David in a cast. Lieutenant Matjeka watched both recordings of the extraneous offenses and opined Gonzales used unjustified force in both incidents.

Gonzales called two witnesses of his own. First, Gonzales called Robert Moreno, retired police officer and instructor with the City of San Antonio Police Department and current instructor with the Alamo Area Council of Governments teaching defense tactics on civilian patrol. Moreno testified as Gonzales's use of force expert. When looking at the photographs taken from the recording of the incident, Moreno explained that prior to Gonzales's take down of Gilbert, Moreno saw Gilbert positioning his back to Gonzales's chest to enable himself to presumably headbutt Gonzales. Moreno testified the photographs show Gilbert headbutting Gonzales as evidenced by Gonzales's shield on his helmet moving upwards. With respect to Gonzales's technique in taking Gilbert to the ground, Moreno acknowledged Gilbert was airborne; however, because Gilbert's

legs did not go above his head, Gilbert's head did not hit the ground first. Thus, according to Moreno, Gonzales used reasonable and necessary force against Gilbert and maintained control of Gilbert during the sweep while taking Gilbert to the ground.

Moreover, Moreno opined that the laceration to Gilbert's head was inconsistent with one that a person would receive if their head made significant forceful contact with the ground, adding those lacerations are usually larger with jagged edges and not a small straight cut. Thus, Moreno testified the size and location of the laceration Gilbert suffered along with the substance seen in the pictures of Gonzales's helmet after the incident are consistent with Gilbert headbutting Gonzales's helmet with enough force to cut his head.

During the State's cross-examination, Moreno agreed Gonzales did not use reasonable force during the incident in which Gonzales pushed another inmate's head into the wall but stated his opinion regarding that incident did not change his opinion regarding the incident in this case. Moreno also acknowledged Gilbert displayed signs of pain after Gonzales took him to the ground.

Gonzales also called Brian Clark, a SERT member and deputy with the Bexar County Sheriff's Office, who testified he reviewed the recording of the incident between Gonzales and Gilbert as an instructional video in his SERT training. According to Deputy Clark, at the time of the incident, policies and training did not prohibit an officer from utilizing a leg sweep on an inmate wearing handcuffs or shackles.

### C. Assault Causing Bodily Injury

#### 1. Applicable Law

A person commits assault by "intentionally, knowingly, or recklessly caus[ing] bodily injury to another[.]" TEX. PENAL CODE ANN. § 22.01(a)(1). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8).

"Bodily-injury assault is a result-oriented offense." *Simms v. State*, 629 S.W.3d 218, 223 (Tex. Crim. App. 2021) (citing *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008)). Thus, the precise act or nature of the conduct is inconsequential. *Landrian*, 268 S.W.3d at 537. "What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the [l]egislature has specified." *Id*. (internal citation omitted).

### 2. Analysis

Gonzales first challenges the sufficiency of the evidence to support a finding that he caused Gilbert "bodily injury." As defined above, "[b]odily injury" is "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8). "Any physical pain, however minor, will suffice to establish bodily injury." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012). "A fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Id*. Notably, "[t]he existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.).

While Gilbert did not testify, Dr. Zink, who treated Gilbert in the emergency room, explained that Gilbert suffered a laceration and a "boggy hematoma"—a collection of coagulated blood resulting from bleeding under the scalp that feels like jelly underneath—from the incident. Moreover, several witnesses stated they heard Gilbert moan after hitting the floor, and the recording demonstrates this as well. Thus, the evidence is sufficient to support a finding of "bodily injury." *See Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989) (finding the evidence was sufficient to support a finding of bodily injury and recognizing a bruise on the victim's "right wrist corroborate[d] the fact that she was indeed injured to some extent in the struggle").

Gonzales also argues that the evidence is insufficient because the State did not prove any of the alleged culpable mental states. The State may prove a defendant's criminal culpability by direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). "Intent may [ ] be inferred from circumstantial evidence such as acts, words, and the conduct of the [defendant]." *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). "[T]he factfinder may consider the defendant's conduct and surrounding circumstances and events in deciding the issue of intent." *Lee v. State*, 442 S.W.3d 569, 580 (Tex. App.—San Antonio 2014, no pet.).

A person acts intentionally when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id*. § 6.03(c). "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id*.

Here, the evidence included the deputies' and physician's testimony describing Gilbert's injuries, photographs of those injuries, and the recording of the incident. Whether because Gilbert contacted Gonzales's helmet from a headbutt or an attempted headbutt, Gonzales stated, "Really," then forced Gilbert off his feet while Gilbert was handcuffed and shackled, dropping him to the floor causing him to hit his back and head on the concrete. Viewing all of the evidence cumulatively and in the light most favorable to the verdict, a rational jury could have found that Gonzales knowingly or recklessly caused bodily injury to Gilbert because Gonzales would be aware that lifting a handcuffed and leg-shackled inmate's legs off the ground and then causing the inmate to fall uncontrollably onto the concrete is reasonably certain to cause bodily injury. *See Bin*

*Fang v. State*, 544 S.W.3d 923, 928–29 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding a rational jury could infer the defendant's culpable mental state in an assault bodily injury case "because a person would be aware that beating someone with a fist is reasonably certain to cause bodily injury").

Because a rational jury could have found the charged elements of the offense of assault bodily injury beyond a reasonable doubt, we hold that the evidence is legally sufficient to support the conviction.

We overrule Gonzales's eleventh issue.

### D. *Official Oppression*

#### 1. Applicable Law

To convict Gonzales of official oppression as charged, the State was required to prove that Gonzales: (1) acting under the color of his employment as a Bexar County Sheriff's Office deputy, (2) intentionally, (3) subjected Gilbert to mistreatment, (4) by committing assault, and (5) Gonzales knew his conduct was unlawful. *See* TEX. PENAL CODE ANN. § 39.03(a)(1); *see also State v. Edmond*, 933 S.W.2d 120, 127 (Tex. Crim. App. 1996) (explaining that when charged with official oppression by mistreatment, the defendant must have known the mistreatment alleged in the indictment was in fact unlawful in that it was either criminal or tortious); *see also Palacios v. State*, 511 S.W.3d 549, 553 (Tex. App.—Corpus Christi–Edinburg 2014, no pet.).

Mistreatment is not defined by statute. However, the indictment and jury charge listed the specific act, namely assault with bodily injury, as the act of mistreatment. Based on that description, for this court to affirm Gonzales's conviction for official oppression, there must be legally sufficient evidence that Gonzales intentionally mistreated Gilbert—by assaulting him and causing bodily injury—with knowledge that doing so was unlawful. *See* TEX. PENAL CODE ANN. § 39.03(a)(1); *Edmond*, 933 S.W.2d at 127.

The Penal Code defines "[u]nlawful" as "criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege." TEX. PENAL CODE ANN. § 1.07(a)(48). Thus, the State must prove that Gonzales, while acting under the color of his office, knew his mistreatment of Gilbert was criminal or tortious or that it would be criminal or tortious because his defense was inadequate to establish a justification. *See id.* § 39.03(a)(1); *Ryser v. State*, 453 S.W.3d 17, 26 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Norris v. Branham*, 557 S.W.2d 816, 818 (Tex. App.—El Paso 1977, writ ref'd n.r.e.) (noting that definition of unlawful recognizes defense of justification)).

2. Analysis

In addition to Gonzales arguing he did not assault Gilbert, with respect to committing official oppression, Gonzales contends that regardless of the other elements of the offense, there is insufficient evidence that he knew the way he took Gilbert to the ground was unlawful. Rather, Gonzales maintains that his use of force was necessary and reasonable to control Gilbert.

Gonzales's use of force expert, Moreno, testified that Gonzales controlled Gilbert's fall to the floor and thus concluded Gonzales's use of force was not excessive. The State, on the other hand, presented several witnesses, including a SERT trainer, its own use of force expert, and other employees who testified Gonzales's technique was not permitted, Gilbert's fall was not controlled, and Gonzales's use of force was excessive. Moreover, the State provided two extraneous offenses involving Gonzales's use of force with other inmates to prove Gonzales's intent to assault or mistreat Gilbert. *See* TEX. R. EVID. 404(b)(2) (allowing evidence of other acts to prove, among other things, intent of the actor in the charged crime).

Considering the evidence, the recordings of the incident, and other extraneous offenses, the jury could draw reasonable inferences from the evidence to find the requisite knowledge. *See Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007); *see also*

*Rabb v. State*, 434 S.W.3d 613, 617 (Tex. Crim. App. 2014). When viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which the jury could have concluded Gonzales intended to take Gilbert to the floor in the manner he did, resulting in his assault conviction, and that Gonzales knew he was using more force than was immediately necessary to effectuate control over Gilbert while handcuffed and shackled, *i.e.*, that Gonzales knew his mistreatment of Gilbert was unlawful.

We overrule Gonzales's tenth issue.

### E. *Violating the Civil Rights of a Person in Custody*

#### 1. Applicable Law

To convict Gonzales of violating the civil rights of a person in custody as charged, the State must have proved that Gonzales: (1) while employed as a Bexar County Sheriff's Office deputy at the Bexar County Adult Detention Center, (2) intentionally, (3) denied or impeded Gilbert's exercise or enjoyment of the right, privilege, or immunity to be free from being mistreated, (4) by committing assault, and (5) Gonzales knew his conduct was unlawful. *See* TEX. PENAL CODE ANN. § 39.04(a)(1).

#### 2. Analysis

Like his official oppression conviction, Gonzales challenges the sufficiency of the evidence supporting his conviction for violating the civil rights of a person in custody by contending there is no evidence showing he knew his conduct was unlawful. Nevertheless, under the same reasoning as explained under our sufficiency analysis of Gonzales's official oppression conviction, the evidence is sufficient from which the jury could conclude Gonzales intended to use the technique on Gilbert, knowing his conduct was unlawful, which resulted in Gilbert's mistreatment while he was in custody.

We overrule Gonzales's ninth issue.

**HEARING ON MOTION FOR NEW TRIAL**

In his second issue, Gonzales contends the trial court abused its discretion in failing to hold a hearing on his motion for new trial. The State, on the other hand, argues Gonzales waived this issue by not requesting a hearing on his motion for new trial.

*A. Standard of Review, Applicable Law, and Preservation and Presentment*

A defendant is entitled to move for a new trial. *See* TEX. R. APP. P. 21; *Drew v. State*, 743 S.W.2d 207, 223 (Tex. Crim. App. 1987). A criminal defendant does not, however, have an "absolute right" to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion and will reverse only if the trial court's ruling falls outside the zone of reasonable disagreement. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). A trial court abuses its discretion in failing to hold a hearing on a motion for new trial if the motion and accompanying affidavits (1) raise matters which are not determinable from the record, and (2) establish reasonable grounds showing the defendant could potentially be entitled to relief. *See id.* at 338–39.

The defendant must support a motion for new trial with one or more affidavits that set forth the factual basis for the relief sought. *Id.*; *see Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). The defendant need not establish a prima facie case for a new trial: a hearing on the motion for new trial is warranted if the motion and affidavit(s) show that reasonable grounds exist for determining that a new trial could potentially be granted. *Wallace*, 106 S.W.3d at 108; *see* TEX. CODE CRIM. PROC. ANN. art. 40.001 ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."); *Hobbs*, 298 S.W.3d at 201–02. The hearing's purpose is to give the defendant an opportunity to fully develop the issues raised

in his motion (1) so that the trial court can decide whether the case should be retried and (2) to prepare a record for presenting issues on appeal if relief is denied. *Smith*, 286 S.W.3d at 338.

"In addition to timely filing the motion with supporting affidavits that demonstrate reasonable grounds for believing that some error has occurred, the defendant must present the motion to the trial court." *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005) (footnotes and citations omitted). The motion must also generally be "presented" to the trial court within ten days of its filing. *See* TEX. R. APP. P. 21.6. To present the motion to the trial court, a "defendant must give the trial court actual notice that he timely filed a motion for new trial and requests a hearing on the motion for new trial." *Rozell*, 176 S.W.3d at 230.

"'Presentment' must be apparent from the record, and it may be shown by such proof as the judge's signature or notation on the motion or proposed order, or an entry on the docket sheet showing presentment or setting a hearing date." *Gardner v. State*, 306 S.W.3d 274, 305 (Tex. Crim. App. 2009). While rule 21.6 does "not require a personal visit [to the trial court]," it "do[es] require some documentary evidence or notation that the trial [court] personally received a copy of the motion and could therefore decide whether to set a hearing or otherwise rule upon it." *Id*.; *see also* TEX. R. APP. P. 21.6.

*B. Presentment was Made*

Here, Gonzales timely filed his motion for new trial on August 19, 2022, following his July 21, 2022 conviction. In the opening paragraphs of his motion for new trial, Gonzales asserted that a "hearing is necessary, and respectfully request[ed] a hearing on this motion for new trial." A copy of the motion, made part of the supplemental clerk's record, dated April 10, 2023, and filed with this court, contains the trial court's notations on the first page of the motion stating, "22 Aug 22 Reviewed JM[,]" and on the last page stating, "22 Aug 22 'Presented.' JM[,]" indicating the

motion was presented and reviewed by the trial court, in this instance by the Honorable Jefferson Moore, on August 22, 2022.

The record indicates Gonzales requested a hearing and presented the motion to the trial court as evidenced by the trial judge's notations on the motion itself that Gonzales presented the motion and requested the hearing to the trial court. *See Gardner*, 306 S.W.3d at 305; *see also Stokes v. State*, 277 S.W.3d 20, 22 (Tex. Crim. App. 2009) (explaining notations evidencing the presentment of a motion for new trial to a trial court should be those of the trial judge or someone authorized to act on the trial judge's behalf). Therefore, because Gonzales preserved his issue for review, we must determine whether the trial court abused its discretion in failing to hold a hearing on his motion for new trial. *See Smith*, 286 S.W.3d at 339.

### C.      *Entitlement to a Hearing*

The basis for Gonzales's motion for new trial concerns his allegations that the State withheld exculpatory *Brady*[1] evidence—namely two SERT members interviewed by the State who did not believe Gonzales intended to harm Gilbert—as well as the State's affirmative misrepresentation to Gonzales's trial counsel that no SERT member would provide favorable evidence on Gonzales's behalf. Gonzales attached two affidavits to his motion for new trial, one by Gonzales's trial counsel and the other by the SERT member responsible for recording the incident, Trevino, who averred Gonzales did not intend to harm Gilbert and did not perform the leg sweep as alleged by the State at trial.

Specifically, Gonzales's trial counsel stated in his affidavit that he requested orally and in writing any *Brady* evidence from the Bexar County District Attorney's Office. Gonzales's trial counsel added that he was affirmatively "told by members of the Bexar County District Attorney's

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

Office that they had interviewed the SERT team members who participated in the events of April 20, 2014[,] with Mr. Gonzales" and "advised no SERT team member had any favorable evidence for Mr. Gonzales." Additionally, the prosecutors who tried the case on the State's behalf represented to Gonzales's defense team that they had not taken notes while interviewing any witnesses pretrial. Nevertheless, Gonzales's trial counsel explained in his affidavit that during the punishment phase of the trial, he called Bexar County Sheriff's Office Deputy Joe Garza, who worked with Gonzales on the SERT at the Bexar County Adult Detention Center, to testify on Gonzales's behalf. Gonzales's trial counsel recalled Deputy Garza's testimony wherein he explained the State interviewed him prior to trial, and members from the district attorney's office were present and took notes. According to Gonzales's trial counsel's affidavit, Deputy Garza also expressed his disbelief that Gonzales intended to injure Gilbert.

Trevino asserted in his affidavit that the State interviewed him just prior to trial and took notes during the interview. Like Deputy Garza, Trevino stated he did not believe Gonzales intended to harm Gilbert. Trevino also averred that while witnessing and recording the incident, he did not see the alleged move, the leg sweep, that Gonzales was criticized for performing. In addition, Trevino described the State's tactics as attempting to have him answer questions in a particular fashion, to which Trevino maintained he refused to answer the way the State preferred.

The information contained within the affidavits attached to Gonzales's motion for new trial were not determinable from the record as the exculpatory evidence was allegedly learned post-conviction. Thus, Gonzales satisfies the first criterion—alleging grounds not determinable from the record—leaving us to determine whether Gonzales also established the second criterion, the existence of reasonable grounds for the relief sought. *See Smith*, 286 S.W.3d at 338–39.

Under *Brady*, a prosecutor has a duty to disclose to a defendant material, exculpatory evidence. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also Pena v. State*, 353 S.W.3d 797, 810

(Tex. Crim. App. 2011). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667, 682 (1985). While the State has a constitutional duty to disclose *Brady* evidence, it is not required to disclose evidence that it does not have in its possession and does not know exists. *Pena*, 353 S.W.3d at 810. Additionally, the State is not required to disclose evidence if the defendant was aware of the exculpatory evidence or could have accessed it from other sources. *See id.*

"As a prerequisite to obtaining a hearing on a motion for new trial, the motion must be supported by an affidavit, either of the accused or someone else specifically showing the truth of the grounds of attack." *Crowell v. State*, 642 S.W.3d 885, 889 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Smith*, 286 S.W.3d at 339). Here, the affidavits specify the exculpatory evidence the two SERT members would have provided to Gonzales's defense. Moreover, Gonzales's trial counsel averred that the State not only failed to disclose this *Brady* evidence but also affirmatively misrepresented to him that the prosecutors had interviewed all the SERT members who witnessed the event and none of them had favorable evidence for Gonzales.

To entitle a defendant to a hearing on a motion for new trial, the affidavits attached to the motion need not reflect every legal component required to establish relief. *See Martinez v. State*, 74 S.W.3d 19, 21–22 (Tex. Crim. App. 2002). Rather the affidavits must reflect reasonable grounds exist for the relief sought, and specifically show the truth of the grounds alleged as the basis for a new trial. *See id.* Gonzales's trial counsel's and Trevino's affidavits do just that. Testimony of other trained SERT members who witnessed the incident in question and who would contradict the essential elements the State was required to prove beyond a reasonable doubt to support Gonzales's convictions provides reasonable grounds for determining that a new trial could be potentially granted. *See Wallace*, 106 S.W.3d at 107–08; *Martinez*, 74 S.W.3d at 21.

While we do not consider whether the trial court should grant Gonzales's motion for new trial, the trial court abused its discretion in declining to conduct a hearing on Gonzales's motion for new trial.

We sustain Gonzales's second issue.

## CONCLUSION

Because Gonzales was entitled to a hearing on his motion for new trial, and we sustain his issue complaining of the trial court's failure to conduct a hearing, we abate this appeal and remand this cause to the trial court to conduct a hearing on Gonzales's motion for new trial on or before October 31, 2024. The trial judge shall see that a record is made and shall order the court reporter and the trial clerk to forward a transcribed record of the hearing and a supplemental clerk's record containing the trial court's signed order ruling on the motion for new trial. Those records shall be filed with the clerk of this court on or before thirty days following the trial court's order. *See Guillory v. State*, 652 S.W.3d 499, 507 (Tex. App.—Houston [14th Dist.] 2022, abatement order on reh'g) (per curiam); *see also Martinez*, 74 S.W.3d at 22.

The appeal is abated, treated as a closed case, and removed from this court's active docket. The appeal will be reinstated on this court's active docket after the supplemental reporter's and clerk's records are filed. It is the responsibility of any party seeking reinstatement to request a hearing date from the trial court and to schedule a hearing in compliance with this court's order. If the parties do not request a hearing, the court coordinator of the trial court shall set a hearing date and notify the parties of the date and time of the hearing. *See Guillory*, 652 S.W.3d at 507–08.

Irene Rios, Justice

DO NOT PUBLISH